FISTER/WARREN, Successor in Interest to Charles L. Fister and Associates, Inc., *et al.*, Plaintiffs-Appellants and Counterdefendants-Appellees, v. BASINS, INC., *et al.*, Defendants-Appellees and Counterplaintiffs-Appellants.

First District (6th Division) Nos. 1—90—2260, 1—90—2882 cons.

Opinion filed July 12, 1991.—Rehearing denied August 30, 1991.

Carrane, Newman & Freifeld, of Chicago (Jerome C. Brezinsky, of counsel), for appellants.

Schiff, Hardin & Waite, of Chicago (Walter C. Greenough and Yvonne E. Mena, of counsel), for appellees.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiffs-appellants Charles Fister, Robert Warren and Fister/Warren brought the action below, seeking, *inter alia*, a declaration that the noncompetition agreement between Fister/Warren and

defendants-appellees Basins, Inc. (Basins) and Georgia Marble Company (Georgia Marble), was void and unenforceable. Defendants filed a counterclaim alleging that Fister/Warren had violated the covenant not to compete. Defendants sought damages for the alleged violation of the agreement and issuance of an injunction restraining Fister/Warren from further violation of the agreement.

Defendants brought a motion for summary judgment. The trial court granted the motion, holding that the noncompetition agreement was valid and enforceable and finding that Fister/Warren was liable on the counterclaim for violating the agreement. The court also issued an injunction restraining Fister/Warren from further violation of the covenant not to compete. Subsequently, Fister/Warren brought two motions to reconsider the trial court's ruling on defendants' motion for summary judgment. While the trial court denied the reconsideration motion(s) with respect to the validity and enforceability of the agreement, it reversed its ruling on the issue of Fister/Warren's liability for violation of the agreement. An evidentiary hearing ensued, and the trial court then entered judgment in favor of Fister/Warren.

Fister/Warren argues on appeal, as it did below, that the covenant not to compete is void and unenforceable. Georgia Marble and Basins have also appealed the entry of judgment in favor of plaintiffs as to liability. We affirm the trial court's ruling with respect to the validity and enforceability of the noncompetition agreement, but reverse the trial court's entry of judgment in favor of Fister/Warren.

On March 10, 1969, Basins entered into a sales agency agreement with Charles L. Fister and Associates, the predecessor in interest to Fister/Warren. Charles Fister and Robert Warren, pursuant to the sales agency agreement, were responsible for marketing Basins' stone products in the entire United States. By January of 1986, however, plaintiffs were only marketing Basins' products in three States: Illinois, Wisconsin and Indiana. Plaintiffs, in January of 1986, owned approximately 35% of the ownership interest in Basins. The Addison family owned approximately 60% of the Basins stock, and several other individuals owned the remaining few shares of the Basins stock.

In January of 1986, Basins was sold to Georgia Marble, which had been in the stone products business since only 1984. At the time Georgia Marble purchased Basins, it operated in the southeast portion of this country, and its purchase of Basins allowed Georgia Marble to expand its market over the entire United States. The sale of Basins to Georgia Marble was effectuated via a stock purchase agreement through which Georgia Marble purchased all of the outstanding stock of Basins. All of the shareholders, including Fister/Warren and Fister

and Warren individually, executed the agreement, and at the close of the sale Basins, Georgia Marble and Warren individually executed a noncompetition agreement. (Both defendants and plaintiffs assume and do not dispute that although only Warren signed the noncompetition agreement, Charles Fister and Fister/Warren are bound by its covenants.)

The terms of this agreement were that plaintiffs agreed, for a period of five years and as to the entire United States, not to

"[d]irectly or indirectly, either as an employee or a member of of [sic] a partnership, or as an employee, sponsor, promoter, stockholder, officer or director of a corporation or or [sic] other business entity, or otherwise, own, manage, operate, contract, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business, whether foreign or domestic, similar to or competing with the type of business conducted by the Company and the Products produced by the company, within the United States of America."

The noncompetition agreement further prohibited plaintiffs from soliciting existing customers, from influencing existing employees to leave the company or from disclosing customer lists and confidential information.

Georgia Marble's president, Albert Gay, testified that while Georgia Marble valued the assets of Basins at about $8 million, it paid an additional $4 million because it wanted to operate Basins as an ongoing entity. Gay further testified that Fister/Warren received over $4 million for its stock. Fister testified that Fister/Warren and its attorneys reviewed the noncompetition agreement and Fister/Warren considered the amount paid for the stock to be fair. Gay testified that the purchase of Basins by Georgia Marble would not have taken place had Fister/Warren not agreed to enter the noncompetition agreement. Plaintiffs were terminated as agents for Georgia Marble in October of 1986.

At the evidentiary hearing which ultimately ensued, both plaintiffs and a representative of Georgia Marble testified that it was the understanding of the parties to the stock purchase agreement that Fister/Warren would be precluded from selling stone products in competition with Georgia Marble. Plaintiffs did not think the agreement would be enforceable, however, and on August 1, 1988, Fister/Warren became the exclusive distributor for one of Georgia Marble's and Basins' competitors—Colorado Quarries, Incorporated (Colorado Quarries).

Plaintiffs filed suit against defendants in February of 1987. Counts I and III of the complaint sought a declaration by the court that the noncompetition agreement was invalid and unenforceable. In March of 1989, defendants filed an amended counterclaim, which in count II alleged that the plaintiffs had violated the noncompetition agreement by entering into the agreement with Colorado Quarries. Plaintiffs did not file any affirmative defenses to the counterclaim, nor did they argue any affirmative defense in responding to defendants' motion for summary judgment.

Fister/Warren sought reconsideration of the trial court's ruling, both with respect to the validity of the noncompetition agreement and as to Fister/Warren's liability for violating the agreement. Fister/Warren's first motion for reconsideration was denied on a technical ground. A second motion for reconsideration was brought, which was denied as to the validity of the noncompetition agreement, but was granted with respect to the violation thereof by plaintiffs. Key to the trial court's granting of the motion on the second issue were two letters introduced by Fister/Warren, for the first time at the reconsideration stage of the litigation. These letters, dated in February and June of 1987, were from defendants' attorney, and in sum stated that the "executives" of Georgia Marble did not understand the "noncompete agreement" to exclude plaintiffs from selling competing products, but only understood the agreement to mean that plaintiffs could not compete in the "quarrying business."

While the terms of the noncompetition agreement are broad, the only competition with respect to sales defendants have sought to restrain plaintiffs from pursuing has been plaintiffs' sale of competing white marble. Plaintiffs' ability to sell other stone products has never been questioned.

The first issue we address is whether the covenant not to compete is void and unenforceable as a matter of law.

Although judgment was entered for Fister/Warren on the issue of its liability for violating the noncompetition agreement, Fister/Warren has nonetheless appealed the issue of whether the trial court erred in granting defendants summary judgment on the issue of whether the noncompetition agreement was valid. Preliminarily, the parties have disputed which law is to be applied in analyzing this issue. The stock purchase agreement provides that the law of Wyoming would apply. Defendants insist that the panel is bound to construe solely Wyoming law, while Fister/Warren argues that we should apply the law of Illinois.

■ As the court in *Hartford v. Burns International Security Services, Inc.* (1988), 172 Ill. App. 3d 184, 187, 526 N.E.2d 463, observed:

> "Illinois has recognized the validity of an express choice of law provision contained in a contract. [Citations.] However, the law will be given effect subject to certain limitations: whether the choice of law provision contravenes Illinois public policy and whether there is some relationship between the chosen forum and the parties or the transaction. [Citation.] *** Nevertheless, conflict of law rules are resorted to only when a difference in the law would be determinative of the outcome of the litigation. [Citation.]"

■ In this case, Fister/Warren does not raise an issue with regards to the latter limitation—that there is no relationship between the parties or the transaction to Wyoming. Fister/Warren only argues that recognition of the parties' choice of law provision would violate the public policy of Illinois. The public policy of a State must be sought in its constitution, legislative enactments and judicial decisions. (*Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 327, 461 N.E.2d 1365.) Fister/Warren has cited to a number of Illinois judicial decisions which state general principles in Illinois to the effect that restrictive covenants are strictly scrutinized and must be reasonable restraints of trade to be enforceable. The very same policy considerations are expressed in the Wyoming law which defendants cite. (See *Ridley v. Krout* (1947), 63 Wyo. 252, 180 P.2d 124; *Keller v. California Liquid Gas Corp.* (D. Wyo. 1973), 363 F. Supp. 123.) Fister/Warren has not persuasively articulated why Illinois public policy is violated by the existence of the noncompetition agreement, as might be the result if Illinois, like some jurisdictions, did not enforce such restrictive covenants at all. We therefore refuse to dishonor the parties' choice that Wyoming law apply to the issue.

Our holding that Wyoming law controls the resolution of the issue, however, does not render Illinois law on the subject irrelevant. Defendants contend that Wyoming law compels the result that the covenant not to compete which is at issue be held valid and enforceable. In so doing, defendants rely factually on not one Wyoming case, but place emphasis on decisional law of States other than Wyoming or Illinois. Thus, while we agree that Wyoming law is to be applied in analyzing this issue, given the paucity of Wyoming law on the subject, we look to other jurisdictions, including Illinois, to determine the validity and enforceability of the noncompetition agreement.

The evidence presented below established that the noncompetition agreement was bargained for and ancillary to the stock purchase agreement. That agreement provided that the noncompetition agreement was to follow. Uncontradicted testimony below indicated that Basins, which Georgia Marble purchased to continue operating, had operated on a national level. Georgia Marble was planning on expanding its market from a primarily southeastern United States area of operations. Defendants have cited a number of cases which have held that, upon the facts, five years was not an unreasonable term of duration for a noncompetition agreement entered into pursuant to the sale of a business. (See *McCasland v. Prather* (1978), 92 N.M. 192, 585 P.2d 336; *Flower Haven, Inc. v. Palmer* (Colo. 1972), 502 P.2d 424.) Fister/Warren has cited no authority establishing, and indeed has not argued, that the noncompetition agreement is unreasonable as to duration. Rather, Fister/Warren argues primarily that the geographical scope of the covenant not to compete is unreasonable.

■ In so arguing, Fister/Warren relies heavily upon the case of *McCook Window Co. v. Hardwood Door Corp.* (1964), 52 Ill. App. 2d 278, 202 N.E.2d 36. There, the court held that a covenant not to compete was unreasonable because the restraints the covenant imposed were "greater than necessary for the protection of *** the purchaser of the stock." (*McCook*, 52 Ill. App. 2d at 288.) *McCook* is distinguishable from the instant case in a number of respects. In *McCook*, there was no showing that the sold business had customers as far away as the area (150 miles) the covenant covered, or that the business of the purchaser would potentially expand to those areas. Here, on the other hand, while at the time of purchase the plaintiffs were only operating in three Midwestern States, the plaintiffs had previously operated in numerous States in different areas of the country. Basins had operated in the United States generally, and Georgia Marble intended to expand its operations to other areas of the country. In the instant case, then, as opposed to *McCook*, a showing has been made by defendants that the goodwill which is sought to be protected by such a noncompetition agreement in connection with the purchase of the business was in need or potentially in need of protection. Moreover, in *McCook*, the duration of the covenant was "indefinite." (52 Ill. App. 2d at 288.) Thus, given the large scale of the business to be conducted, the several million dollars plaintiffs received for their shares, and the fact that in order for plaintiffs to prevail they must show a hardship to themselves that is "substantial" (*O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 757, 358 N.E.2d 926), we hold that under

the facts of this particular case the covenant was reasonable and hence is valid and enforceable.

While defendants in their cross-appeal have framed the issues of whether the trial court erred in "allowing the plaintiffs to change their defense theory after the close of evidence and in entering judgment in plaintiffs' favor based on an unpled defense theory," the dispositive issue on appeal as we see it is whether it was error for the trial court to vacate the entry of judgment in favor of defendants based on Fister/Warren's raising its affirmative defense for the first time in its motions for reconsideration.

As indicated, Fister/Warren did not bring the existence of the letters to the trial court's attention until after summary judgment had been entered. The parties have not brought a case to our attention where the issue of the propriety of bringing affirmative matters to the court's attention via a motion for reconsideration for the first time was discussed when the existence of the evidentiary matter supporting the affirmative matter was in the possession of the party seeking to assert it all along. The record is clear that the only reason that the letters were not brought to the court's attention at an earlier stage of the litigation was due to negligence on the part of Fister/Warren. In Fister/Warren's motion for reconsideration, its attorney acknowledged that the letters had been in possession of Fister/Warren's attorneys during the pendency of the motion for summary judgment, and the aspect of the case involving the letters was not discussed until after summary judgment was entered.

Defendants cite a number of cases where the courts have held that affirmative defenses not pleaded have been deemed waived, or where it was held that the trial court could not consider such defenses *sua sponte*. (See *Spagat v. Schak* (1985), 130 Ill. App. 3d 130, 473 N.E.2d 988; *Haas v. Cravatta* (1979), 71 Ill. App. 3d 325, 389 N.E.2d 226; *Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc.* (1976), 41 Ill. App. 3d 981, 354 N.E.2d 904.) These cases, however, are not precisely on point, as they involve defenses raised *sua sponte* by the trial court or defenses raised at an earlier time in the proceeding. Fister/Warren relies on cases which likewise are distinguishable, in that they involve instances where the affirmative defense was interposed before judgment. See *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274; *J. & R. Electric Co. v. Edward P. Allison Co.* (1970), 125 Ill. App. 2d 123, 260 N.E.2d 755.

■ In resolving the issue before us, we find the following observations pertinent. "Presumptively, by the time of the hearing on the motion for summary judgment, the parties know everything to be

known about the facts and the law of the case. The hearing on the motion is a significant, potentially dispositive stage of the proceeding. Entering this stage, the trial judge has a right and a need to know what the parties know." (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1990), 198 Ill. App. 3d 799, 803, 556 N.E.2d 586.) "[T]he parties [at the summary judgment stage] have a responsibility before the hearing to make known to the trial judge the significant matters of which they are aware." *Hill v. Jones* (1990), 198 Ill. App. 3d 854, 858, 556 N.E. 2d 613.

■ Fister/Warren argues in its reply brief that it should be allowed to raise its affirmative defense for the first time upon a motion for reconsideration because "there is no real distinction in determining whether an issue is before the court or formed by the record of the trial, between a motion for summary judgment or a motion for reconsideration." To the contrary, we find the situations distinguishable. While courts have held that an affirmative defense may be raised for the first time at the summary judgment stage, this is because a motion for summary judgment may be filed at any time, even before an answer is filed. (See *Metropolitan Sanitary District v. Anthony Pontarelli & Sons, Inc.* (1972), 7 Ill. App. 3d 829, 288 N.E.2d 905; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.) The same protections are inapplicable at the reconsideration stage, where the hearing on the motion for summary judgment has passed and judgment has been entered.

■ In considering this issue, our supreme court has held that "the submission of a new matter on such a motion after a motion for summary judgment has been granted lies in the discretion of the trial court [citation], but it should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing [citations]. In the absence of any such valid explanation, there was no reason to change the ruling." (*Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 195, 545 N.E.2d 649.) In our view, no reasonable explanation has been given as to why the letters were not set forth in the response to defendants' motion for summary judgment. Thus, as the reconsideration motion did not effectuate the proper purposes of such a motion, it was error for the trial court to grant the motion.

■ Moreover, though Fister/Warren did not move to amend its answer, even if it had, amendment would not have been proper. "Amendments during or on the eve of trial should not ordinarily be permitted if such amendments concern matters which the pleader knew at the time the original pleading was filed and for which the

pleader offers no good reason for not having pleaded the matter in the original pleading." *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, 384 N.E.2d 30.

■ Fister/Warren's remaining argument as to why we should affirm the vacature of summary judgment by the court boils down to the argument that we should do what is fair given the "equities" of the case. Such an argument, in the absence of other persuasive authority to support it, is insufficient to sway us, given the significant, potentially dispositive nature of the summary judgment proceeding and the lack of justification on the part of Fister/Warren in not raising the defense and the letters at an appropriate stage of the proceedings.

Accordingly, we reverse the order of the trial court entering judgment in favor of Fister/Warren.

Reversed.

EGAN and LaPORTA, JJ., concur.