HENGEL, INC., an Illinois corporation, Michael Henry and James Engel, Plaintiffs,

v.

HOT 'N NOW, INC., a Michigan corporation, Julia Goff and William Van Domelen, Defendants.

No. 91 C 7616.

United States District Court, N.D. Illinois, E.D.

June 17, 1993.

1312

Bernard Wiczer, Wiczer & Associates, Northbrook, IL, Marc N. Blumenthal, Otto & Blumenthal, Park Ridge, IL, for plaintiffs.

Stanley J. Adelman, Marc P. Seidler, John F. Verhey, Andrew W. Coleman, Rudnick & Wolfe, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs Hengel, Inc. ("Hengel"), Michael Henry and James Engel brought this suit against defendants Hot 'N Now, Inc. ("Hot 'N Now"), Julia Goff ("Goff") and William Van Domelen ("Van Domelen") claiming, *inter alia,* fraud, misrepresentation, and violations of the Illinois Franchise Disclosure Act. Defendants move to dismiss Counts I, II, IV, V and VI of Plaintiff's First Amended Complaint ("Amended Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons explained below, defendants' motion is granted in part and denied in part.

### Background

For the purposes of this motion, the court accepts plaintiffs' factual allegations as true. *See Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977); *Reshal Assoc., Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226, 1229 (N.D.Ill.1990). Hot 'N Now is a Michigan corporation engaged in the business of operating, and franchising qualified persons to operate fast food stores specializing in the sale of hamburgers and related items. Defendants Goff and Van Domelen

are employees of Hot 'N Now whose responsibilities include selling franchises.

In January, 1988, Van Domelen informed Henry and Engel of the opportunity of investing in a Hot 'N Now franchise. Van Domelen told Henry and Engel that they would be able to operate a Hot 'N Now franchise at a profit, as other franchisees had done. Based upon these representations, Henry invested $120,000 and Engel invested $80,000 in Hengel, Inc., which they created to purchase and operate a Hot 'N Now franchise. Henry and Engel are shareholders, and the officers and directors of Hengel.

On or about February 7, 1988, Hot 'N Now provided plaintiffs with printed financial projections which Van Domelen represented to be based upon actual operations of successful Hot 'N Now stores. In reliance upon these financial projections, plaintiffs signed an agreement to purchase real estate in Crestwood, Illinois for the purchase of Hengel's first store. On May 17, 1988, Hengel executed an Area Development Agreement granting it the exclusive right to own and operate twenty-four Hot 'N Now franchises in Will and parts of Cook County, Illinois. Van Domelen participated in and approved the selection of locations and provided plaintiffs with a set of standard plans and specifications for Hot 'N Now stores. On November 28, 1988 and January 31, 1989, Hengel executed two Franchise Agreements and began financing and constructing two locations in Illinois for its franchises.

On or about May 4, 1988, Hengel signed a State of Michigan Acknowledgement of Receipt of a Uniform Franchise Offering Circular ("UFOC"). However, none of the plaintiffs were given a UFOC on that date. None of the plaintiffs ever received a UFOC for the State of Illinois. Moreover, plaintiffs contend that Hot 'N Now was not registered to offer or sell franchises in Illinois at the time the initial offer was made to Henry and Engel.

On April 28, 1989, plaintiffs began operating their first franchise in Crestwood. By June 1990, plaintiffs realized that substantial advertising would be required to make their franchise a success. Plaintiffs' repeated requests for Hot 'N Now's advertising and

promotion assistance were ignored. In November, 1990, defendants announced that the Hot 'N Now franchise and Hot 'N Now, Inc. had been acquired by Taco Bell, Inc., a subsidiary of PepsiCo. Plaintiffs' difficulties were exacerbated by this acquisition because many of plaintiffs' previous suppliers were virtually eliminated from their list of qualified suppliers. In sum, plaintiffs claim that they made this investment based upon fraudulent representations, and later tried to expand and successfully operate their franchises, but that Hot 'N Now failed to provide the necessary support in operation, training of employees, advertising, etc. Subsequently, plaintiffs filed for bankruptcy.

Plaintiffs filed this action on November 26, 1991. Plaintiffs' Amended Complaint is brought in six counts. Count I alleges violations of the Illinois Franchise Disclosure Act ("IFDA"), Ill.Ann.Stat. ch. 121½, ¶ 1701 et. seq. (Smith–Hurd Supp.1992). Counts II and III allege misrepresentation and breach of contract, respectively. Count IV states a violation of the Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), Ill.Ann.Stat. ch. 121½, ¶ 261 et seq. (Smith–Hurd Supp.1992). Count V claims violation of the Michigan Franchise Investment Law ("MFIL"), Mich.Comp. Laws Ann. § 445.1501 et seq. (West 1989). Count VI alleges violation of the Illinois Uniform Commercial Code ("Illinois UCC"), Ill. Ann.Stat. ch. 26, ¶ 1–203 (Smith–Hurd 1983).

### I. *Choice of Law*

■ Although this issue is buried in the parties' briefs, the court must first address the important question of the applicable choice of law. For the most part, the pleadings and briefs regarding the motion to dismiss presume that Illinois law is applicable to the facts of this case. However, both parties note that the franchise agreements contain a choice of law provision indicating that Michigan law will apply. Here, the franchisor, Hot 'N Now, insists that this choice of law provision is void as a violation of Illinois public policy expressed in the IFDA "antiwaiver" provision at ¶ 1741. (Def. Memo, p. 17). Moreover, despite the fact that plaintiffs have alleged various violations of Illinois law, they argue that the Michigan choice of

law provision is valid and that they should have a remedy under either, or both, states' franchise laws. (Response, pp. 17–18).

■ It is clear that when jurisdiction is based on diversity of citizenship, as is the case here, the district court should apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Under Illinois law, express choice of law provisions will be given effect subject to certain considerations such as Illinois public policy and the relationship between the chosen forum and the parties to the transaction. *Fister/Warren v. Basins, Inc.*, 217 Ill.App.3d 958, 160 Ill.Dec. 858, 861, 578 N.E.2d 37, 40 (1991); *Potomac Leasing Co. v. Chuck's Pub. Inc.*, 156 Ill.App.3d 755, 109 Ill.Dec. 90, 93, 509 N.E.2d 751, 754 (1987). Consequently, the choice of law provision in the instant case should be given effect unless it contravenes a fundamental policy of Illinois or the choice of Michigan law does not bear at least a reasonable relationship to the parties and the transaction. *Potomac*, 109 Ill.Dec. at 93, 509 N.E.2d at 754.

■ Defendants' primary argument is that the choice of law provision contravenes Illinois public policy. In making this public policy determination, the court must look to Illinois' constitution, legislative enactments and judicial decisions. *Fister/Warren*, 160 Ill.Dec. at 863, 578 N.E.2d at 42. Defendants contend that ¶ 1741 of the IFDA is an expression of public policy to prohibit any choice of law provision. Paragraph 1741 provides in pertinent part that "[a]ny condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this Act is void." Ill.Ann.Stat. ch. 121½, ¶ 1741. Defendants argue that the choice of law provision specifying Michigan law is void under this paragraph because it purports to make the IFDA totally inapplicable under facts which would normally give rise to a cause of action under the statute. Unfortunately, the court's research has produced no Illinois state cases interpreting ¶ 1741.

However, defendants rely on the Seventh Circuit's opinion in *Wright–Moore Corp. v.*

*Ricoh Corp.*, 908 F.2d 128 (7th Cir.1990). The court agrees that *Wright–Moore* presents compelling factual similarities. In *Wright–Moore*, the Seventh Circuit agreed with the district court's conclusion that Indiana public policy would preclude the application of a New York choice of law provision. In that case, the plaintiff corporation was an Indiana franchisee, and the franchisor was a New York corporation with its principal place of business in New Jersey. The franchisee argued that the franchisor had violated Indiana law by terminating the relationship without good cause and unilaterally changing the credit terms. Despite the choice of New York law, the Indiana district court held that Indiana had articulated a strong public policy embodied in § 23–2–2.7–1(10) of the Indiana franchise laws, which prohibited parties from contracting out of the protections of Indiana franchise law.

In particular, § 1 of the Indiana franchisee law made it unlawful to enter into a franchise agreement "requiring the franchisee to prospectively assent to a release ... [or] waiver ... which purports to relieve any person from liability to be imposed by this chapter" or to enter into an agreement "limiting litigation brought for breach of the agreement in any manner whatsoever." Ind.Code. §§ 23–2–2.7–1(5), 23–2–2.7–1(10). The district court also found that under Indiana's "most intimate contacts" test, Indiana had a materially greater interest in the litigation because New York's only connection was that the defendant was incorporated in New York. *Wright–Moore*, 908 F.2d at 133.

The Seventh Circuit affirmed both determinations. Although the court noted its deference to the district judge's interpretation of the law of the state in which the judge sits, the court agreed that the provisions articulated a strong state policy against allowing contractual choice of law provisions to control Indiana franchises. Specifically, the Seventh Circuit stated:

> "The public policy, articulated in the non-waiver provisions of the statute is clear: a franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively

provided protections, whether directly through waiver provisions or indirectly through choice of law. This public policy is sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement."

*Wright–Moore*, 908 F.2d at 132.[1] However, Judge Ripple dissented and emphasized that the case hinged on Indiana franchise laws which had not been subject to relevant interpretation by Indiana courts, and noted the potential for such issues to recur given the prevalence of diversity jurisdiction concerning agreements between national franchisors and local franchisees. Consequently, Judge Ripple recommended certifying the controlling issues to the· Indiana Supreme Court. *Id.* at 142–44 (Ripple, J., dissenting).

Although no state case has interpreted the IFDA provision at issue, Judge McDade recently addressed this precise issue in *Flynn Beverage, Inc. v. Joseph E. Seagram & Sons, Inc.,* 815 F.Supp. 1174 (C.D.Ill.1993). In *Flynn,* the plaintiff franchisee was an Illinois corporation and the defendant franchisor was an Indiana corporation with its principal place of business in New York. Relying on the Seventh ·Circuit's reasoning ·in *Wright–Moore* and the language in ¶ 1741, the *Flynn* court held that "the Illinois waiver provision, while not as specific as the Indiana waiver provision, may be read to invalidate choice of law provisions in franchise agreements." 815 F.Supp. at 1178. In reaching that conclusion, the court broadly construed the provision to give effect to ¶ 1702's expressed findings and purpose. Importantly, ¶ 1702 "finds and declares that the sale of franchises is a widespread business activity" and that "Illinois residents have suffered substantial losses where franchisors or their representatives have not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between the franchisor and franchisee, the prior business experience of the franchisor and other factors relevant to the franchise offered for sale."

In the instant case, this court is presented with the unique situation of the *franchisor* arguing that the choice of law provision which it chose is void under Illinois public policy and the *franchisee* arguing that the provision should be given effect (along with Illinois law). However, since the public policy issue has been raised, the reasoning of *Wright–Moore* and *Flynn* is applicable here. Additionally, the Indiana language which prohibits "reliev[ing] any person from liability" and "limiting litigation brought for breach of the agreement," is similar to the broad waiver provisions in the IFDA. Moreover, the language of ¶ 1702 and recent cases indicate that the Illinois General Assembly intended to benefit Illinois residents and franchises. *See e.g.,* Ill.Ann.Stat. ch. 121½, ¶ 1702; *P & W Supply Co. v. E.I. Du Pont de Nemours & Co.,* 747 F.Supp. 1262, 1264 (N.D.Ill.1990) (noting that the IFDA's primary purpose is to deal with the "perceived losses" suffered by Illinois residents where franchisors fail to disclose full and complete information regarding the franchise relationship); *Highway Equipment Co. v. Caterpillar, Inc.,* 908 F.2d 60, 63 (6th Cir.1990) (noting that IFDA is intended to benefit only Illinois residents and that it has no application to franchises outside Illinois).

Admittedly, this does not appear to be the type of case where Michigan law would violate an express public policy of Illinois franchise law such as ¶ 1719's provision which prohibits termination except for good cause. It is also true that numerous Illinois cases have generally upheld choice of law provisions, and· this court is hesitant to depart from these cases. *See, e.g., Potomac,* 109 Ill.Dec. at 93, 509 N.E.2d at 754 (collecting recent cases). However, in the absence of a contrary interpretation by Illinois courts, and in light of the language of the IFDA and the reasoning of *Wright–Moore* and *Flynn,* the court concludes that the specific "anti-waiver" provision under the Illinois franchise statute represents a fundamental policy which invalidates contractual choice of law in ·

---

1. The court also noted that Indiana had a public policy against the provisions of the contract at issue because they were potentially in violation of

Indiana provisions expressly prohibiting renewal without good cause and unilateral change in credit terms. *Id.* at n. 1.

the franchise context.[2] Since the choice of law issue is resolved, the court will now address the motion to dismiss.[3]

## II. *Defendants' Motion to Dismiss*

"The court has a wide range of discretion in handling motions to dismiss, but ordinarily they are granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1349 at 192–93 (1990). Here, defendants argue that Counts I–VI should be dismissed as to Henry and Engel for lack of standing. (Defendants' Memorandum in Support of Their Motion to Dismiss ("Def. Memo"), pp. 5–9). Defendants also contend that for various reasons, plaintiffs' claims in Counts I, II, IV, V and VI should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Def. Memo, pp. 11–20). Additionally, defendants assert that plaintiffs' claims in Counts I, II, IV, and V should be dismissed under Rule 9(b) for failure to plead fraud with specificity. (Def. Memo, pp. 9–11).

## A. *Dismissal for Lack of Standing*

■ As an initial matter, defendants point out that plaintiffs make no attempt to differentiate between the claims asserted by the corporate entity, Hengel, and those asserted by the shareholders, Henry and Engel. Thus, defendants contend that each of Henry and Engel's asserted claims in Counts I–VI should be dismissed for lack of standing because Henry and Engel have failed to allege an injury separate and distinct from any injury to the corporation. (Def. Memo, p. 4). Specifically, defendants claim that Counts I and V for violations under the IFDA and MFIL should be dismissed because Henry and Engel are not "franchisees" as that term

is defined. (Def. Memo, pp. 5–7). Moreover, defendants argue that the remaining counts should be dismissed because the two shareholders cannot sue individually to enforce the contract entered into by Hengel. (Def. Memo, pp. 7–11).

Plaintiffs respond that Henry and Engel have standing, regardless of the particular cause of action, because defendants' actions resulted in Henry and Engel's personal loss in guarantees of mortgages, equipment leases and loans on behalf of Hengel. (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Response"), pp. 1–2; Amended Complaint, ¶¶ 47–48). Defendants reply, among other things, that the mere existence of personal guarantees is insufficient to confer standing under the law. Thus, defendants argue that the shareholders only have a personal cause of action if there is "a contractual or similar relationship between the shareholder and the defendant which gives rise to a special duty owed to the shareholders, the breach of which creates a separate and distinct cause of action on the shareholder's own behalf." (Defendants' Reply Memorandum in Support of Their Motion to Dismiss ("Reply"), p. 2). The court agrees that Counts I–VI should be dismissed as to Henry and Engel.

First, it is clear that the plain language of the IFDA and the MFIL only allow recovery by the "franchisee." Each statute defines a "franchisee" as "a person to whom a franchise is granted." Ill.Ann.Stat. ch. 121½, ¶ 1703(2); Mich.Comp. Laws Ann. § 445.-1502(4). Also, both acts explain that "person" means an individual, *corporation*, partnership, joint venture, association, joint stock company, trust, or unincorporated organization. Ill.Ann.Stat. ch. 121½, ¶ 1703(7); Mich. Comp. Laws Ann. § 445.1503(5) (emphasis added). In the instant case, the pleadings plainly indicate that Hengel, the corporation,

---

**2.** Notwithstanding this conclusion, the court agrees with Judge Ripple that this particular franchise law issue is the type of potentially recurring and central question of state law which is proper for certification to the supreme court of the state.

**3.** Having determined that public policy is a basis for invalidating the parties' contractual choice of law, the court need not decide whether Michigan

has at least a reasonable relationship to the parties and transaction. However, the court notes that Illinois law is central to this dispute because the plaintiff franchisee is an Illinois corporation, the two franchise sites were located in Illinois, and the development agreement contemplated over 20 other franchises in Will, and Cook County, Illinois.

was the only "person to whom the franchise was granted." (Amended Complaint, ¶¶ 10–12). Therefore, only Hengel may sue under the IFDA and the MFIL.

■■ Moreover, plaintiffs' assertions of personal guarantees are insufficient to show that Henry and Engel have a private cause of action for their remaining claims. It is well settled that Illinois courts generally do not recognize an independent cause of action for damages by a plaintiff shareholder suing in his own behalf for injuries sustained as a consequence of acts by a third party directed towards the corporation. See ITT Diversified Credit Corp. v. Kimmel, 508 F.Supp. 140, 144 (N.D.Ill.1981); Poliquin v. Sapp, 72 Ill.App.3d 477, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (1979); Zokoych v. Spalding, 36 Ill.App.3d 654, 344 N.E.2d 805, 813 (1976). However, a stockholder may sue in his individual capacity where the acts complained of are in violation of duties arising from contract or otherwise. Buschmann v. Professional Men's Association, 405 F.2d 659, 660 (7th Cir.1969). Thus, "[a] court must preliminarily determine if the 'gravamen' of the pleadings allege injury to the plaintiff upon an individual claim as distinguished from an injury which affects the shareholders as a whole." Poliquin v. Sapp, 72 Ill.App.3d 477, 28 Ill.Dec. 615, 619, 390 N.E.2d 974, 977 (1979).

For example, in Buschmann, the court allowed the shareholder to sue in his individual capacity because defendant had allegedly breached a separate contract between the plaintiff, the defendant and a bank, prior to the creation of the corporation. Id. at 662–63. In that case, the contract provided that the plaintiff would create the corporation and personally guarantee the bank loan of $140,000. Additionally, the defendant agreed to operate and manage the business of the corporation. Id. In concluding that the plaintiff had a cause of action regardless of any wrong to the corporation, the court noted that the contract between the plaintiff and defendant was the "foundation of the litigation" and that the shareholder should be allowed to sue after fully performing a contract which the defendant allegedly breached. Id. at 660–61. The court also noted that the

plaintiff's principal item of damage arose from the contract between the individual plaintiff and the defendant. Id. at 663.

Despite plaintiffs' assertions to the contrary, such is not the case here. The "foundation" of this litigation arises out of the alleged breach of the franchise agreements which were executed by Hengel, the corporation. Every allegation stems from defendants' alleged acts and omissions in violation of the franchise agreement and various franchise and contract laws. Also, the principal items of damage arise from the breach of these franchise provisions. Moreover, in the instant case, there are no allegations that there was a separate contract between the individuals, Henry and Engel and the defendants. Nor, are there facts suggesting that defendants violated a special duty owed directly to Henry and Engel. Cf. Zokoych v. Spalding, 36 Ill.App.3d 654, 344 N.E.2d 805, 813 (1976) (special duty owed plaintiff shareholder because court found a fiduciary relationship between "partners" in conduct of corporation and defendants directed harm at plaintiff by discharging him as president, refusing to pay his salary, and appropriating all of the assets of jointly-owned business.) Here, the "gravamen" of the pleadings allege injury to the corporation, rather than Henry and Engel.

Furthermore, this conclusion is bolstered by Judge Aspen's decision in ITT Diversified Credit Corp. v. Kimmel, 508 F.Supp. 140 (N.D.Ill.1981). There, the plaintiff corporation, ITT Diversified Credit Corp. ("ITT") sued to enforce a personal guarantee executed by Richard Kimmel ("Kimmel"), on behalf of Medart, Inc. ("Medart"). Kimmel, the sole shareholder in Medart, filed a counterclaim alleging that he suffered a direct injury as a result of ITT's breach of an oral agreement with Medart. Id. at 144. Specifically, Kimmel alleged, among other things, that ITT's unreasonable commercial behavior caused the decline in Medart's profitability and the resultant accumulation of Kimmel's personal debt and liabilities. Id.

Although the court found that ITT was entitled to enforce Kimmel's guarantee, it also held that "the wrongful acts and injuries alleged in the counterclaim do not give Kim-

mel standing to assert a cause of action arising essentially as a consequence of his shareholder status and not from any violation of a duty created by contract or otherwise and owed to him individually by ITT." *Id.* at 145. The same is true here. Henry and Engel's allegations of personal indebtedness arose essentially as a consequence of their shareholder status, and not from any violation of a duty created by contract or otherwise. Therefore, defendants' motion to dismiss the remaining counts as to Henry and Engel is granted. In sum, Counts I–VI are dismissed as to Henry and Engel for lack of standing.

The court now turns to defendants' arguments that Counts I, II, IV, V, and VI should be dismissed in their entirety under Rules 12(b)(6) and 9(b). Although, the preceding section dismisses the two shareholders, the court will continue to refer to "plaintiffs" when discussing the allegations in the Amended Complaint.

**B. *Dismissal Under Rules 12(b)(6) and 9(b)***

■ "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, when considering a motion to dismiss under Rule 12(b)(6), the court must consider all allegations in the complaint in the light most favorable to the plaintiffs, and take all well-pleaded facts as true. *See Sheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ed Miniat, Inc. v. Globe Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986).

■ Conversely, Rule 9(b), which concerns fraud claims, "has generally been held to require specification of the time, place and contents of the misrepresentations, the identities of the persons who made the misrepresentations, and the manner in which the misrepresentations were communicated to the plaintiff." *Reshal Assoc., Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226 (N.D.Ill.1990). Also, when multiple defendants are involved, Rule 9(b) has been interpreted to require

that the complaint inform each defendant of the specific fraudulent acts which constitute the basis of the action against the particular defendant. *Coronet Ins. Co. v. Seyfarth,* 665 F.Supp. 661, 666 (N.D.Ill.1987). However, in determining the degree of specificity required, courts should be mindful of Rule 9(b)'s primary purpose of informing defendants of the nature of the claimed wrong so that they have an opportunity to make an effective response. *Reshal,* 754 F.Supp. at 1230–31.

**Count I—*Violation of the Illinois Franchise Disclosure Act***

■ Plaintiffs claim that defendants violated the IFDA by 1) failing to provide them with an Illinois offering circular at least ten business days prior to receipt of consideration or execution by Hengel of the area development agreement or the two franchise agreements, 2) providing plaintiffs with pro forma statements containing material misrepresentations and omissions in violation of section 1706(b) of the IFDA and paragraph 200.303 of the regulations promulgated under the IFDA, 3) providing construction plans and specifications and assisting in site selection prior to the execution of the franchise agreements or delivery of the Illinois UFOC. (Amended Complaint, ¶¶ 30–33, 37). Defendants respond that plaintiffs have failed to state a claim because this cause of action is barred by § 1727, the statute of limitations governing the IFDA.

Section 1727's "Periods of Limitation" provides in pertinent part:

No action shall be maintained under section 26 of this Act to enforce any liability created by this Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of the facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Act, or 90 days after delivery to the franchisee of a written notice disclosing the violation, whichever shall first expire.

Defendants contend that the one year limitation period has run because plaintiffs had knowledge of the facts and circumstances reasonably indicating a claim for the failure to receive Illinois offering circulars by May 17, 1988, the execution date of the Area Development Agreement and November 28, 1988 and January 31, 1989, the dates the franchise agreements were executed. Similarly, Defendants argue that the facts and circumstances regarding the pro forma statements claim arose in April 28, 1990, one year after opening the first franchise, or by June, 1990, the date when plaintiffs realized that their sales did not approximate those contained in the pro forma statements.

Defendants also contend that the three year limitations period has run on the ¶ 200.-303 prohibition for providing materially inconsistent earnings statements in the pro formas because "the act or transaction constituting the violation" occurred in February, 1988. Likewise, defendants claim that the construction plans and specifications claim is time barred because "the act constituting the violation" occurred in February and March, 1988. (Def. Memo, pp. 13–14). In general, plaintiffs respond that this claim hinges on knowledge, and that they did not become aware of the facts or circumstances reasonably indicating a claim regarding the Illinois offering circulars until July, 1991, on the advice of counsel. Alternatively, plaintiffs assert that equitable tolling applies.

■ The court rejects defendants' motion to dismiss the Illinois offering circular and pleading claims as being barred by § 1727's one year period of limitations. Despite defendants' arguments to the contrary, it is far from clear that plaintiffs "became aware of facts and circumstances reasonably indicating" these claims beyond the one-year deadline. First, the court can detect no facts which would indicate that plaintiffs should have known that defendants' were required to provide Illinois offering circulars to them 10 days before Hengel executed the various franchise and development agreements. Moreover, taking the pleadings in the light most favorable to plaintiffs, the allegation that plaintiffs realized their franchise was not performing as well as those in the pro formas

is insufficient to show knowledge of facts and circumstances "reasonably indicating" a violation of Illinois franchise laws. Although this language suggests that facts short of express advise from counsel will start the running of the statute, those facts are not clearly present here. Moreover, the court declines to make a "reasonableness" determination solely on the pleadings.

■ However, the language that the action must be brought "before the expiration of 3 years after the act or transaction constituting the violation upon which it was based," would serve to bar the claims based on the pro forma statements and construction plans and specifications. Clearly, the "act or transaction" of these alleged violations of ¶ 1706(b) of the IFDA and ¶ 200.303 of the regulations, occurred when the pro formas were given to plaintiffs in February, 1988. Since this lawsuit was filed on November 26, 1991, these claimed violations would be barred unless equitable estoppel applies.

■ Under Illinois law, plaintiffs must show both due diligence and defendants' fraudulent concealment to obtain the benefits of equitable tolling. *Pucci v. Santi,* 711 F.Supp. 916, 923 (N.D.Ill.1989). However, where a fiduciary with a duty to disclose engages in a fraudulent scheme to hide wrongdoing, the fraudulent scheme tolls the running of the limitations period even in the absence of affirmative misrepresentations and plaintiff's due diligence. *Id.*

Here, although plaintiffs acknowledge that a franchisor is not a fiduciary under Illinois law, they contend that Illinois recognizes a quasi-fiduciary or "special" relationship between a franchisee and a franchisor that requires the franchisor's disclosure of all material information. (Response, p. 13). In support, plaintiffs cite *West Coast Video Enter. v. Ponce De Leon,* 1991 WL 49566, 1991 U.S.Dist. LEXIS 4209 (N.D.Ill. April 4, 1991).

In *West Coast,* the court analyzed the disclosure requirement in light of ¶ 1706(b) of the IFDA which provides that it is unlawful for a franchisor "to ... make any untrue statement of a material fact or omit to make the statements made, in light of the circum-

stances under which they are made, not misleading." Ill.Ann.Stat. ch. 121½, ¶ 1706(b). After reviewing this language, the court determined that the plaintiffs need not establish a special relationship to introduce the nondisclosure evidence because ¶ 1706(b) recognizes the relevance of nondisclosure evidence and implicitly recognizes that a special relationship exists between franchisor and franchisee. 1991 WL 49566 at *8, 1991 U.S.Dist. LEXIS 4209 at *21–22. This case did not address the requirements for pleading equitable estoppel under Illinois law. Therefore, the court does not construe it to waive the requirements of pleading affirmative misrepresentations and due diligence.[4]

In the instant case, plaintiffs' pleadings fail to allege affirmative acts to conceal the causes of action, or any facts going to their due diligence. Therefore, the claims regarding the pro forma statements and construction specifications must be dismissed as barred by the three-year statute of limitations. However, plaintiffs' response suggests that they may be able to amend their complaint to plead these facts. Plaintiffs are given leave to file an amended complaint by June 28, 1993.

█ Defendants also argue that "plaintiffs' vague and conclusory allegations of fraud fall far short of Rule 9(b)'s particularity threshold." (Def. Memo, p. 9). Plaintiffs appear to concede this point by pointing to affidavits which are more specific on the time, place, manner of the fraud, and the particular defendants involved. Therefore, defendants' motion to dismiss Count I under Rule 9(b) is granted. However, the information contained in the affidavits suggests that plaintiffs can plead fraud with the requisite specificity. Therefore, plaintiffs are given leave to provide this information in their amended complaint.

### Count II—Misrepresentation

█ Defendants argue that plaintiffs fail to state a cause of action for misrepresentation because the allegations relate to future conduct or opinion, rather than misrepresen-

tation of a past or existing fact. (Def. Memo, p. 15). Plaintiffs agree that statements as to future profitability and financial success are generally not actionable. However, they claim that their allegations fall under the exception in *Carroll v. First National Bank of Lincolnwood*, 413 F.2d 353 (7th Cir.1969). (Response, p. 4). In *Carroll*, the court reiterated the general rule that Illinois denies recovery for fraud based on a false representation of future conduct, but recognized a cognizable claim for fraud where "the false promise or representation of future conduct is claimed to be the scheme used to accomplish the fraud." *Id.* at 358.

In the instant case, plaintiffs allege actionable fraud in: 1) the projected financial statements given to Engel by Van Domelen in February, 1988, 2) the representations regarding Hot 'N Now's advertising support, 3) the representations concerning franchisor support and assistance (Amended Complaint, ¶¶ 16, 40–42). Moreover, plaintiffs maintain that this conduct comes under the exception because the financial statements are statements of fact which were based on actual past performance of existing stores, and the purported advertising and other support are "false representations of future conduct."

█ The court rejects plaintiff's assertion that the projected financial statements can support a claim for fraud. The law is clear that "mere expressions of opinion of future occurrences, especially of future profitability, are not actionable." *North Am. Fin. Group v. S.M.R. Enterprises*, 583 F.Supp. 691, 698 (N.D.Ill.1994). The *Carroll* case does not hold otherwise. For example, in *Barrington Press, Inc. v. Morey*, 752 F.2d 307, 310 (7th Cir.1985), the Seventh Circuit explained that the *Carroll* exception only applies to future conduct. The court stated that

> These projections [of future sales and profitability] cannot ground a fraud claim … because they are predictions or opinions regarding future business performance, not representations of pre-existing material facts. Appellants' reliance on the excep-

---

**4.** If this case has any application here, it might indicate that a lesser showing is required than if

no "special" relationship existed at all.

tion to this preexisting material fact requirement given in ... *Carroll* ... is misplaced since those cases involved promises of future *conduct* by the seller, whereas here the misrepresentation regards the seller's projections or *opinions* as to the business's future sales and profitability....

*Barrington,* 752 F.2d at 310 n. 1 (citations omitted). Consequently, the projected financial statements in this case cannot be the basis of a fraud claim. However, plaintiffs allegations that defendants made promises of future *conduct* which was part of a scheme to accomplish the fraud are arguably sufficient to fall within the *Carroll* exception. Since the court cannot say that Hengel can prove no set of facts in support of its misrepresentation claim, dismissing Count II on this ground is not warranted.

■ Alternatively, defendants argue that this count should be dismissed for failure to plead the time, place, and manner of the alleged misrepresentations. The Amended Complaint adequately lists the subject of the representations, states that defendants Van Domelen and Goff turned over the promotional and advertising material,[5] alleges that some of the represented support programs never existed, and gives dates upon which requests for support were denied. (Complaint, ¶¶ 10–13). Although plaintiffs have arguably provided sufficient information to allow defendants to respond, this count should also be amended with the more specific information provided in the affidavits. Consequently, defendants' motion to dismiss Count II under Rule 9(b) is granted. Plaintiffs should amend this count by June 28, 1993.

### Count IV—Violation of the Consumer Fraud Act

■ Defendants insist that plaintiffs' Consumer Fraud Act claim fails as a matter of law because "plaintiffs do not plead the

requisite public injury or an effect on consumers generally." (Def. Memo, p. 16). Moreover, defendants argue that, although the Consumer Fraud Act was recently amended to "remove" its public injury requirement, plaintiffs are bound by the pre-amendment public injury requirement. Plaintiffs respond that the Consumer Fraud Act's amendment made explicit the fact that a public injury was never required under the statute. Moreover, they contend that the allegation regarding termination of forty employees is sufficient to state a public injury. (Response, pp. 15–16).

■ The Seventh Circuit addressed this issue in *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.,* 962 F.2d 628 (7th Cir.1992). In *Hardin,* the court concluded that the amendment to the Consumer Fraud Act was intended to merely clarify the statute, rather than change the requirements for violating the Act. *Id.* at 637–38. Thus, the court held that a showing of public injury was not required under the pre-amendment version of the statute. *Id.* Accordingly, defendants' motion to dismiss on the basis of plaintiffs' failure to plead a public injury is denied.[6] Defendants also argue that this count should be dismissed for a lack of specificity because plaintiffs do not indicate how the financial statements were misleading, or the time, place and manner of the fraud. (Def. Memo, p. 11). The court disagrees.

Plaintiffs' allege a violation under § 2 of the Consumer Fraud Act which prohibits "unfair or deceptive acts or practices." Ill. Ann.Stat. ch. 121½, ¶ 262. To state a claim for fraud under this provision, plaintiffs need to generally "allege a false statement of material fact made in the conduct of any trade or commerce with the intent to induce others to rely thereupon," *People ex rel. Hartigan v. E & E Hauling,* 218 Ill.App.3d 28, 160 Ill.Dec. 691, 577 N.E.2d 1262 (1991), *aff'd in*

---

5. The complaint erroneously states that "Hot 'n Now provided Plaintiffs William Van Domelen and Julia Goff with various promotional and advertising material...." (Amended Complaint, ¶ 40). The court assumes that plaintiffs meant to say that defendants Van Domelen and Goff provided plaintiffs with the promotional materials.

6. This court declines defendants' invitation to ignore the Seventh Circuit's clear holding in *Hardin,* in favor of the earlier and "better reasoned" opinion on the Consumer Fraud Act in *A. Kush & Assoc., Ltd. v. American Stats. Ins. Co.,* 927 F.2d 929, 938–39 (7th Cir.1991).

*part and rev'd in part,* 153 Ill.2d 473, 180 Ill.Dec. 271, 283, 607 N.E.2d 165, 177 (1992). Here, plaintiffs claim that the financial statements they were given were "misleading," and "geographically insignificant because they showed results for company owned stores in Michigan only." (Amended Complaint, ¶¶ 58–59). Plaintiffs also allege several facts supporting their detrimental reliance on the statements. (Amended Complaint, ¶¶ 47, 57 A–H). Moreover, ¶ 45 states that plaintiffs were told that the projections were representative and that they could expect to have similar success. Also, ¶ 46 alleges that defendants knew or should have known that their representations contained material errors and omissions, and that the representations were made intentionally. Taking these pleadings in the light most favorable to Hengel, plaintiffs have alleged a violation of the Consumer Fraud Act with sufficient specificity and defendants' motion to dismiss this count under Rule 9(b) is denied.

### Count V—Violation of the Michigan Franchise Investment Law

 Defendants argue that the MFIL does not apply to this dispute. Given the resolution of the choice of law issue, the court agrees. Specifically, since the IFDA invalidates the parties' contractual choice of law, Michigan law, including the MFIL, is inapplicable. Consequently, Count V is dismissed under Rule 12(b)(6).

### Count VI—Violation of the Illinois Uniform Commercial Code

 Defendants argue that plaintiffs' mere allegations that defendants did not act in good faith, fails to state a claim under § 1–203 of the Illinois UCC. Moreover, defendants contend that in order to state a claim, plaintiffs must allege that Hot 'N Now exercised its contractual discretion in an arbitrary and capricious manner. (Def. Memo, p. 19). Plaintiffs respond that their allegations do allege arbitrary and capricious conduct by defendants. (Response, p. 19).

In *Bonfield v. AAMCO Transmissions, Inc.,* 708 F.Supp. 867, 884 (N.D.Ill.1989), the court explained that "In Illinois, 'a covenant of fair dealing and good faith is implied into every contract absent express disavowal.'"

(quoting *Foster Enter., Inc. v. Germania Fed. Sav. and Loan Ass'n,* 97 Ill.App.3d 22, 52 Ill.Dec. 303, 308, 421 N.E.2d 1375, 1380 (1981). Moreover, the court stated that the contract is breached when contractual discretion is exercised in bad faith. *Bonfield,* 708 F.Supp. at 884. Specifically, a party vested with contractual discretion may not exercise that discretion "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Dayan v. McDonald's Corp.,* 125 Ill.App.3d 972, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984).

Here, ¶ 75 alleges that the franchise agreements promise that Hot 'N Now will make promotional and marketing information and advice available "as may periodically be developed and deemed by the Company to be helpful." Similarly, ¶ 76 claims that Hot 'N Now promised to stay in the forefront of developments in the industry and make available such resources and assistance "as may be developed by the Company and deemed of benefit." Moreover, ¶ 77 alleges that defendants had a duty and obligation of performing the franchise agreements in good faith. Additionally, plaintiffs made numerous other allegations which are incorporated by reference. For example, plaintiffs contend that the company failed 1) to provide any advertising or promotional support (¶ 50), 2) to respond to numerous requests for advertising assistance (¶ 52); and 3) to give assistance and information on techniques to strengthen the business (¶ 49). Taking all these allegations in the light most favorable to plaintiffs, Hengel has stated a claim for the arbitrary and capricious denial of discretionary duties. Consequently, defendants' motion to dismiss Count VI is denied.

### Conclusion

In conclusion, defendants' motion to dismiss is granted in part and denied in part. Specifically, Henry and Engel are dismissed from Counts I–VI for lack of standing. Counts I and II are dismissed for failure to plead fraud with specificity under Rule 9(b). Plaintiffs are given until June 28, 1993, to file an amended complaint including more specific information on the time, place, manner of the fraud, and the identity of the particular

defendants involved in the frauds alleged in Counts I and II. Defendants should answer by July 17, 1993. Defendants' motion to dismiss Count IV is denied. Defendants' motion to dismiss Count V under Rule 12(b)(6) is granted. Defendants' motion to dismiss Count VI is denied.