LOUIS S. POLIQUIN *et al.*, Plaintiffs-Appellants, *v.* LEONARD W. SAPP *et al.*,
Defendants-Appellees.

Fourth District    No. 15107

Opinion filed June 7, 1979.

Robert Weiner, of Springfield (Terry L. Fields, of counsel), for appellants.

Sorling, Northrup, Hanna, Cullen and Cochran, Ltd., of Springfield (R. Gerald Barris, of counsel), for appellees.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The plaintiffs were all shareholders in Rail of Illinois, Inc. (Rail), a corporation which was dissolved in November 1971. Two separate complaints were originally filed against the defendants, Leonard W. Sapp, Jacob Bunn, Jr., and Brookdale Development Co. (Brookdale). These actions were ultimately consolidated by the trial court and were dismissed on the ground that any right of recovery against the defendants accrued to Rail and not to the plaintiffs as individuals. The primary issue on appeal is whether or not the allegations of the complaints, taken as

true, established a right in the plaintiffs to recover pecuniary and punitive damages in their own names.

The relevant allegations of the two complaints may be summarized as follows. Defendants Sapp and Bunn were shareholders and directors of Rail prior to its dissolution in 1971. Defendant Sapp was in addition an officer of Rail. These two defendants were also officers, directors, and shareholders of defendant Brookdale.

It was alleged that in February 1968, Rail entered into an option agreement to purchase all of the stock of Brookdale. Brookdale's primary asset was a contract to purchase a 170-acre tract of land from Russell Petefish, who was also a shareholder and director of Rail. This contract to purchase had allegedly been assigned to Brookdale by Sapp and Bunn individually.

Under the option agreement Rail was to make annual payments to Brookdale from 1968 to 1982 to maintain the option privilege. The agreement further provided that Rail would be permitted to take possession of the premises to construct a golf course and related resort facilities.

At the heart of the complaints was the allegation that, as directors of Rail, Sapp and Bunn knew that the corporation was in some financial distress and would probably not be able to meet the option payments. It was asserted that, pursuant to a conspiracy, Sapp and Bunn encouraged the investment of sums in excess of $360,000 by Rail and the shareholders of Rail for the development of the golf course and resort. It was further contended that defendants, while soliciting and encouraging these investments, represented to the other officers and directors of Rail that they (Sapp and Bunn), as directors of Brookdale, would allow Rail to default on the annual option payments without penalty. The option agreement itself provided that Rail's interest in the option could be terminated by Brookdale should Rail default in the payments.

Contrary to their alleged stated intentions, it was charged that the defendants merely intended to forbear declaring a forfeiture until the value of the property had been substantially increased as a result of Rail's developmental investments.

The further charge is made that in reliance on the assurances of Sapp and Bunn, no payments on the option were made by Rail for the period between 1968-1971. On Decembr 9, 1971, defendants served a notice of forfeiture upon Rail. Plaintiffs, by their complaints, contended that this action occurred a short time after the adoption of a city of Springfield ordinance assuring the availability of water for the real estate. It was, additionally, alleged that, prior to the notice of forfeiture, defendants had neither made demand nor otherwise given notice of their intent to invoke the forfeiture provision of the option agreement. It was charged that,

prior to giving their notice of forfeiture, defendants had refused plaintiffs' request that they assist Rail by selling the real estate so that the corporation could be saved or the plaintiffs could partially recoup their investment.

Finally, it was alleged that Brookdale, after retaking possession of the property, leased the golf course to the city of Springfield and that Sapp and Bunn, thereafter, took title to the property as individuals and eventually transferred the property into a land trust for their benefit. Their interests were then purportedly assigned as security for certain preexisting debts.

■■ ■ The question presented here is whether these allegations sufficiently set forth a "personal" claim by the individual plaintiffs or whether the injury, if any, was in substance caused to the corporation. If the injury is incurred by the corporation then the shareholders can only sue upon a derivative basis and not as individuals. (*Surowitz v. Hilton Hotels Corp.* (7th Cir. 1965), 342 F.2d 596; *Brodsky v. Frank* (1930), 342 Ill. 110, 173 N.E. 775.) A court must preliminarily determine if the "gravamen" of the pleadings alleges injury to the plaintiff upon an individual claim as distinguished from an injury which affects the shareholders as a whole. *Zokoych v. Spalding* (1976), 36 Ill. App. 3d 654, 344 N.E.2d 805.

■■■ The substance of the plaintiffs' allegations is that the defendants, as interlocking directors of the two corporations, Rail and Brookdale, engaged in a fraudulent scheme to acquire Rail assets and investments for the benefit of Brookdale. It is readily conceded that directors cannot use their position within the corporation to deal with or administer corporate property for their own personal gain or for the benefit of another entity or person. It is the duty of directors to manage the corporate business solely in the interest of the corporation. However, it is apparent that this duty is owed to the *corporation* and any breach thereof would result in injury to the corporation and the shareholders as a whole. (See 3A W. Fletcher, Cyclopedia Corporations §§1101-02 (1975); *Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 166 N.E.2d 793.) It is evident, under the allegations of the complaints before us, that the losses suffered by the individual plaintiffs are a direct result of their status as shareholders.

■■■ Representations were made during the course of oral argument that these plaintiffs, in addition to their common injury as shareholders, also suffered losses as creditors of the corporation. The record discloses that plaintiffs moved to amend their complaint and attempted to plead personal as opposed to common injuries resulting from the defendants' scheme. An exhibit was attached to this motion which included copies of certain personal checks of the plaintiffs made payable to Rail and one promissory note executed by Rail which was payable to one of the named

plaintiffs. The motion to amend and the tendered amendments, however, merely alleged that the plaintiff shareholders advanced monies to Rail in reliance on misrepresentations of the defendants. We believe these allegations failed to set forth sufficient facts establishing their status as creditors of Rail as distinguished from their status as shareholders. The allegations of a complaint are not rendered sufficient by mere conclusions of law and, thus, the denial of the motion to amend must be sustained. (See *Richardson v. Eichhorn* (1958), 18 Ill. App. 2d 273, 276, 151 N.E.2d 819.) Absent sufficient allegations by the plaintiffs that they were defrauded as creditors of Rail, the trial court's determination that they lacked standing to bring this action individually was proper.

■■ Plaintiffs alternatively argue that this cause of action cannot be brought by the corporation because the corporation was not in existence when this lawsuit was initiated. However, the dissolution of a corporation prior to the commencement of an action against erring directors does not serve to create individual right of actions in shareholders, where the action, as here, is representative or derivitive in character. (13 W. Fletcher, Cyclopedia Corporations §5909 (1970).) The reasons for prohibiting individual suits by shareholders when the corporation is still in existence (*i.e.*, avoidance of a multiplicity of suits and protection of the rights of creditors) would be equally applicable when the corporation has dissolved.

Section 94 of the Business Corporation Act provides:

"The dissolution of a corporation * * *, shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name." Ill. Rev. Stat. 1975, ch. 32, par. 157.94.

■ Section 94 is in essence a corporate survival statute rather than a statute of limitations. Its purpose is to extend the life of the corporation for a two year period after dissolution so as to allow suits to be brought by or againt a corporation which would otherwise abate upon dissolution. *People v. Parker* (1964), 30 Ill. 2d 486, 490, 197 N.E.2d 30; *Consolidated Coal Co. v. Flynn Coal Co.* (1934), 274 Ill. App. 405.

At common law, a corporation's capacity to sue and be sued terminated when the corporation was legally dissolved. (16A W. Fletcher §8142 (1975).) The right of shareholders to bring what is in essence a derivative suit, based on the director's fraud or mismanagement, would,

thus, have abated but for the provision of section 94. Compare with *Parker* (director's statutory liability for failure to notify known creditors of intent to dissolve does not abate upon dissolution and, therefore, section 94 has no application and will not prevent recovery more than two years after dissolution).

In *Koepke v. First National Bank* (1972), 5 Ill. App. 3d 799, 284 N.E.2d 671, the majority shareholder of a defunct corporation, on behalf of all shareholders, brought an action in equity for breach of contract. Suit was filed four years after dissolution of the corporation. The trial court, pursuant to section 94, dismissed the action. The plaintiff conceded that the corporation was required to bring an action within two years of dissolution, but attempted to avoid the statute on the ground that his action was an equitable one brought, not by the corporation, but by the shareholders. The appellate court held that section 94 was clearly applicable to the plaintiff's suit. See also *Canadian Ace Brewing Co. v. Anheuser-Busch, Inc.* (N.D. Ill. 1978), 448 F. Supp. 769 (court rejected contention that fraudulent concealment tolled Illinois' two year survival statute).

■■ We find the analysis of *Koepke* controlling in the instant case. The original complaint in this case was filed two years and one week after the dissolution of Rail. The individual shareholders, having failed to bring an appropriate derivative action on behalf of the corporation within the time allowed under section 94, cannot now sue individually for the injury inflicted upon the defunct corporation.

■■ ■ Having thus dealt with plaintiffs' primary contention concerning their standing to sue defendants individually, we similarly dispose of their additional argument concerning counts II and III of the separate complaints. These counts were based on the defendants' alleged breach of a fiduciary duty owed to the individual plaintiffs. It was alleged that, as a result of this relationship, defendants were obligated to demand prompt payment of the option payments from Rail or otherwise give notice of or warn the plaintiff shareholders of the consequences of forfeiture. It is well settled that directors or officers of a corporation occupy a confidential or fiduciary relationship to the corporation and its shareholders. (*Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 67 N.E.2d 265.) Again, however, the duties and obligations incident to this relationship are owed to the corporation and not to the shareholders individually. This indirect obligation arising from the plaintiffs' status as shareholders is similarly insufficient to support their personal claims. The allegations of the complaints do not otherwise set forth, in law or in fact, the existence of a fiduciary relationship between the parties. Any right of recovery under the allegations of these counts was similarly held by the corporation and

should have been instituted in its behalf within two years of dissolution. Accordingly, the order of the trial court dismissing the consolidated actions is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.