**ITT DIVERSIFIED CREDIT CORP., a Delaware Corporation, Plaintiff,**

**v.**

**Richard KIMMEL, Joseph Rockelmann, and John Rockelmann, Defendants.**

No. 80 C 3053.

United States District Court,
N. D. Illinois, E. D.

Jan. 12, 1981.

Richard G. Siegel, Boehm & Weinstein, Inc., Chicago, Ill., for plaintiff.

Santo J. Volpe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, ITT Diversified Credit Corp. ("ITT"), a Delaware corporation, filed this diversity action to enforce the personal guarantees executed on August 31, 1976, by defendants, Richard Kimmel ("Kimmel"), Joseph Rockelmann, and John Rockelmann, all Illinois residents, guarantying the payment of certain business loans made by ITT to Medart, Inc. ("Medart"), a Mississippi corporation.[1] Presently before the Court is ITT's motion for summary judgment against Kimmel on his guaranty. In addition, ITT has moved to strike Kimmel's affirmative defenses and to strike his counterclaim seeking $4,000,000 in compensatory damages and $10,000,000 in punitive damages as a consequence of ITT's alleged malicious and commercially unreasonable conduct in its course of dealing with Medart regarding the administration of the loan agreements supported by the guaranty involved herein.

## SUMMARY JUDGMENT

In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of fact material to a judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979). While the non-moving party is entitled to all reasonable inferences that can be drawn in its favor from the evidence in the record, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961), it may not merely rely upon unsupported allegations in

---

1. This Court denied Kimmel's motion to dismiss for lack of subject matter jurisdiction on August 20, 1980. *ITT Diversified Credit Corp. v. Kimmel*, No. 8-3053 Mem. Op. F.Supp. (N.D. Ill., Aug. 20, 1980). ITT's motions for default and judgment against John Rockelmann in the amount of $3,080,874.16 was allowed on September 26, 1980.

its pleadings, but rather, must affirmatively show by affidavit or otherwise that there are factual issues that must be decided at trial in response to the movant's assertion that no genuine issues of material fact exist. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 560 (7th Cir. 1970).

In the case at bar, the undisputed facts are relatively straightforward. Medart was incorporated by Kimmel in 1976 and thereafter purchased the assets of the Medart Division of Jackes-Evans Corporation. Kimmel is the president, chief operating officer, and, since 1978, the sole shareholder of Medart. On August 31, 1976, soon after its incorporation, Medart arranged to borrow operating funds from ITT Commercial Finance Corporation ("Commercial"), the corporate predecessor of ITT Diversified Credit Corporation, pursuant to an accounts receivable agreement, an inventory loan agreement, a machinery and equipment security agreement, and a promissory note given by Medart to Commercial. On that same date, Kimmel and the Rockelmanns executed a guaranty providing, in pertinent part, that:

> For valuable consideration, the receipt of which is hereby acknowledged, Undersigned jointly and severally unconditionally guarantee to [Commercial] the full and prompt performance by Medart, Inc.... of all obligations which [Medart] presently or hereafter may have to [Commercial] and payment when due of all sums presently or hereafter owing by [Medart] to [Commercial].

The guaranty further provides that:

> For the purposes of this guaranty and indemnity, all sums owing to [Commercial] by [Medart] shall be deemed to have become immediately due and payable if (a) [Medart] defaults in any of its obligations to [Commercial] . . . (c) . . . a petition [under any section of the Bankruptcy Act, as amended,] be filed by [Medart] . . .

The guaranty also provides that it is assignable and that the obligations of the guarantors are not to be impaired in any way by "[n]ew agreements or obligations of [Medart] with or to [Commercial]; amendments, extensions, modifications, renewals, or waivers of default as to any existing or future agreements or obligations of [Medart] . . . to [Commercial], or extensions of credit by [Commercial] to [Medart]."

ITT Commercial Finance Corporation was merged into ITT Diversified Credit Corporation on August 11, 1977, thereby becoming a division of ITT rather than continuing its existence as a separate corporate entity. On June 6, 1979, Medart entered into another loan agreement with ITT secured by a deed of trust on certain real property purchased by Medart and subject to the continuing guaranty executed in 1976 by Kimmel and the Rockelmanns. Thereafter, Medart was apparently beset by financial difficulties and ITT imposed ceilings on the amount of funds it would release to Medart under the accounts receivable and inventory loan agreements. In May, 1980, unable to secure alternative financing to satisfy its accumulating debt to ITT, Medart filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (1979), in the United States District Court for the Northern District of Mississippi.

In determining the rights of the parties to a guaranty, as in determining the *rights and obligations flowing from any* contract, we must look first to the language in the document itself. *Blackhawk Hotel Associates v. Kaufman*, 80 Ill.App.3d 462, 465, 35 Ill.Dec. 875, 878, 400 N.E.2d 12, 14–15 (1st Dist. 1979). "Where a contract of guaranty is unequivocal in its terms, it must be interpreted according to the language used, for it is presumed that the parties meant what their language clearly imports." *Jacobson v. Devon Bank*, 39 Ill. App.3d 1053, 1055–56, 351 N.E.2d 254, 255– 56 (1st Dist. 1976), quoting *National Acceptance Co. v. Exchange National Bank*, 101 Ill.App.2d 396, 402, 243 N.E.2d 264, 267 (1st Dist. 1968). "Thus, in the absence of an

ambiguity, the plain language of the contract controls and no extrinsic evidence need be adduced." *Blackhawk Hotel Associates v. Kaufman, supra,* 80 Ill.App.3d at 465, 400 N.E.2d at 15.

■ The contract of guaranty involved in this case contains a very broad assumption of liability on the part of the guarantors. The guaranty is expressly made assignable and specifically provides that modification of the loan agreements supported by the guaranty does not impair the obligations of the guarantors. Accordingly, Kimmel's argument that any assignment of the guaranty from Commercial to ITT as a result of the merger along with some alleged material change in the business dealings between Medart and Commercial-ITT releases him from liability on the guaranty is clearly misguided in light of the unambiguous language in the contract itself.[2] Kimmel apparently contends that despite the broad language of the guaranty, ITT's conduct was so commercially outrageous and materially different from that contemplated by the parties that the guarantors must be discharged from liability on their guaranty. However, the record is completely devoid of any evidence tending to show that ITT's conduct in administering the loan agreements with Medart does not easily fit within the enumeration of factors that are deemed to leave the obligations of the guarantors unimpaired "in any manner whatsoever:" *e. g.,* "[n]ew agreements or obligations ... amendments, extensions, modifications, renewals, waivers of default as to any existing or future agreements ..." Indeed, the accounts receivable and inventory loan agreements themselves expressly authorize ITT to exercise its sole

discretion from time to time in determining the amount of funds to be released and the percentage of receivables to be advanced to Medart under the agreements, which is the most egregious conduct attributed to ITT by Kimmel in calling for the discharge of his guaranty. The evidence in the record also does not support Kimmel's contention that there is inadequate consideration to support the continuing guaranty executed at the same time as the loan agreements. Illinois courts have held that there is adequate consideration for a guaranty when it is executed contemporaneously with the creation of the principal loan. *First National Bank of Red Bud v. Chapman,* 51 Ill.App.3d 738, 740, 9 Ill.Dec. 426, 429, 366 N.E.2d 937, 940 (5th Dist. 1977).

Accordingly, we hold that Kimmel is bound by his guaranty. Since Medart's petition for bankruptcy, filed in May, 1980, constitutes a default under the individual agreements with ITT as well as under the terms of the guaranty, this Court holds that ITT is entitled to enforce the guaranty against Kimmel as one of the guarantors jointly and severally liable thereunder. Finding that there are no material facts in issue and that summary judgment is appropriate as a matter of law, ITT's motion for summary judgment is hereby granted.[3] It is so ordered.[4]

### COUNTERCLAIM

■ ITT's motion to strike the counterclaim is appropriately considered as a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). In such a posture, the allegations in the counterclaim must be

---

2. The United States Court of Appeals for the Seventh Circuit has held that a merger or consolidation, like a simple corporate name change, generally has no effect upon the obligations of the guarantor unless there is some material change in the business relationship between the debtor and creditor and an increase in the risk undertaken by the guarantor beyond that originally contemplated by the parties. *Essex International, Inc. v. Clamage,* 440 F.2d 547, 550 (7th Cir. 1971).

3. In light of our disposition of the motion for summary judgment, it is unnecessary to consider ITT's motion to strike Kimmel's affirmative defenses.

4. The record is barren of any discussion regarding the amount owed to ITT by Medart and the amount of Kimmel's liability under the guaranty. ITT is directed to file a statement with respect to damages with this Court by January 30, 1981. Kimmel may file a response by February 10, 1981.

taken as true. The counterclaim should not be dismissed unless it appears beyond doubt that Kimmel could prove no set of facts in support of the counterclaim which would entitle him to relief. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

The counterclaim states that Kimmel suffered direct injury as a result of ITT's alleged breach of an oral agreement with Medart by which ITT allegedly agreed to continue to lend Medart funds until Medart could acquire alternative financing to replace the loans and obligations due ITT. The counterclaim further states that Kimmel, as president and sole shareholder of Medart, was injured by ITT's alleged commercially unreasonable behavior in withholding funds from Medart under the loan agreements, overcharging Medart for interest due on the various outstanding loans, notifying Medart's customers to forward to ITT payments due Medart, and utilizing other unfair economic pressures to squeeze Kimmel out of Medart and force Medart and Kimmel to concede to ITT's demands. Kimmel's alleged injuries include the reduction in his income due to the salary cut imposed by the bankruptcy court, the decline in Medart's profitability and in any dividends from that company, the loss and diminution in value of his stock, the accumulation of personal debt and liabilities from Medart's business decline, damage to his personal reputation in the business community, and great emotional distress, pain, and suffering.

Illinois courts generally do not recognize an independent cause of action for damages by a plaintiff-shareholder suing in his own behalf rather than derivatively on behalf of the injured corporation where there is no showing that the plaintiff himself has been injured in any capacity other than in common with his fellow shareholders as a consequence of the wrongful actions of a third-party directed towards the corporation.

*Poliquin v. Sapp*, 72 Ill.App.3d 477, 480, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (4th Dist. 1979); *Zokoych v. Spalding*, 36 Ill. App.3d 654, 663, 344 N.E.2d 805, 813 (1st Dist. 1976); *In re Knight*, 60 Ill.App.2d 457, 460, 208 N.E.2d 679, 681 (1st Dist. 1965) ("wrongful actions ... which injure the stockholders by impairing the capital position of the corporation give no right of action to the stockholders as individuals.) [5]" "However, this general principal has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed dirctly by the wrongdoer to the stockholders." *Zokoych v. Spalding, supra*, 36 Ill.App.3d at 663, 344 N.E.2d at 813. *See also, Buschmann v. Professional Men's Association*, 405 F.2d 659 (7th Cir. 1969); 13 Fletcher, Cyclopedia Corporations, § 5921 (1980). Thus, "[a] court must preliminarily determine if the 'gravamen' of the pleadings alleges injury to the plaintiff upon an individual claim as distinguished from an injury which affects the shareholders as a whole." *Poliquin v. Sapp, supra*, 72 Ill.App.3d at 480, 28 Ill.Dec. at 618, 390 N.E.2d at 977; *Zokoych v. Spalding, supra*, 36 Ill.App.3d at 663, 344 N.E.2d at 813.

Viewed in the light most favorable to Kimmel, his counterclaim alleges injury as a consequence of his position as sole shareholder of Medart rather than from any individual claim he might have apart from his status as a shareholder. The circumstances of the instant case are clearly distinguishable from those in a case such as *Buschmann v. Professional Men's Association, supra*, in which the plaintiff acquired standing to maintain a cause of action for breach of contract, independent of any cause of action his corporation might have, because of the existence of a separate contract between himself and the defendant corporation. *See also Eden v. Miller*, 37 F.2d 8, 9–10 (2d Cir. 1930). This case at bar is also distinguishable from *Zokoych v. Spalding, supra*, the sole case cited and relied upon by Kimmel

---

5. "The law is clear that only a corporation and not its shareholders, not even a sole shareholder, can complain of an injury sustained by, or a wrong done to, the corporation." *United States v. Palmer*, 578 F.2d 144 (5th Cir. 1978).

in support of his counterclaim, in which the plaintiff was injured by his partner's wrongful appropriation of one-half the ownership and all of the assets of a business that they operated together. In contrast to *Zokoych*, the wrongs alleged in the counterclaim in the instant case were directed at Medart, and Kimmel's injuries derive solely from his status as president and sole shareholder of that company. While Medart, or Kimmel suing derivatively on its behalf, may have standing to pursue a cause of action on the basis of the alleged wrongs perpetrated by ITT,[6] the wrongful acts and injuries alleged in the counterclaim do not give Kimmel standing to assert a cause of action arising essentially as a consequence of his shareholder status and not from any violation of a duty created by contract or otherwise and owed to him individually by ITT.

Accordingly, ITT's motion to dismiss the counterclaim for failure to state a claim upon which relief may be granted is allowed. It is so ordered.

---

**6.** This Court expresses no opinion at this time as to the potential viability of such a cause of action should it be asserted at some future date. Our point is only that the wrongs alleged are of the type commonly brought by or on behalf of a corporation rather than by an individual shareholder-plaintiff in his own name.