Samuel TOSCANO, Jr., Plaintiff,

v.

Robert KOOPMAN, et al., Defendants.

Case No: 15 C 2197

United States District Court,
N.D. Illinois.

Signed 12/07/2015

Benjamin Guthrie Stewart, Keating Muething & Klekamp PLL, Cincinnati, OH, Erik J. Ives, Fox, Swibel, Levin & Carroll, LLP, Chicago, IL, for Plaintiff.

Scott Collins Sullivan, Joel M.L. Huotari, WilliamsMcCarthy LLP, William A. Reilly, II, Reilly Law Offices, Rockford, IL, for Defendants.

## ORDER

FREDERICK J. KAPALA, District Judge

Defendants' motion to dismiss for failure to state a claim [22] is granted in part. Plaintiff's complaint is dismissed for failure to comply with the verification requirement of Rule 23.1(b). The individual claims alleged in Counts II, IV, and V are dismissed without prejudice. The motion is denied in all other respects. Plaintiff is granted leave to file a verified amended

complaint consistent with the directives in this order within 30 days.

## STATEMENT

In this diversity-of-citizenship direct and derivative action, plaintiff, Samuel Toscano, Jr., a minority shareholder in defendants Precision Dose, Inc. ("Precision Dose") and Cup Pac Packaging, Inc. ("Cup Pac") (collectively "the companies"), has sued his fellow shareholders, Robert Koopman and Frank Darnell, and the companies, as well as Koopman's and Darnell's company, Precision Dose Properties, Inc. Plaintiff alleges oppression of a minority shareholder, breach of fiduciary duty, breach of contract, unjust enrichment, and seeks an equitable accounting. Before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 23.1(b) and 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part.

## I. ALLEGATIONS [1]

The companies are Illinois corporations that sell specialized medical and food service products. They are owned by Koopman, a citizen of Illinois; Darnell, a citizen of Indiana and Florida; plaintiff, a citizen of New Jersey; Thomas Anderson; and the estate of James E. Kleinheinz. Koopman, the Chief Executive Officer and President of the companies, and Darnell, majority shareholder and Treasurer, are the controlling shareholders of the companies. Plaintiff, Thomas Anderson, and the estate of Kleinheinz are the minority shareholders. Each of the shareholders are parties to the Precision Dose Shareholders Agreement and the Cup Pac Shareholders Agreement which are substantively identical (collectively the "shareholders agreements"). The Boards of Directors of the

companies are Koopman, Darnell, plaintiff, Anderson, and the son of Kleinheinz, as the representative of his estate.

### A. Transfer of Cup Pac's Option to Purchase Real Estate to Precision Dose Properties and its lease of the Real Estate Back to Cup Pac

Koopman and Darnell are the sole shareholders of Precision Dose Properties, an Illinois corporation. After plaintiff became a shareholder in Precision Dose, and soon after the formation of Cup Pac, defendants caused Cup Pac to enter into an Industrial Building Lease with Sobo, Inc. (the "Sobo Lease Agreement"), under which Cup Pac leased real estate for its operations and under which it had an option to purchase that real estate. On March 16, 2010, Koopman executed an assignment transferring Cup Pac's option to Precision Dose Properties for no consideration. Koopman and Darnell took no steps to assure that this transaction, which directly benefitted them at the potential expense of Cup Pac, was in fact in the interest of Cup Pac. Cup Pac was not represented by independent counsel in connection with the assignment, and it was not approved by the Board of Directors or the shareholders. Soon thereafter, Precision Dose Properties purchased the real estate under the option in the Sobo Lease Agreement.

On June 1, 2012, Precision Dose Properties entered into another Industrial Building Lease, this time with both Precision Dose and Cup Pac, which included the real estate on which both companies operated, which in turn included the real estate which Precision Dose Properties purchased under the option. Neither Darnell nor Koopman took any steps to protect the

---

1. The facts are drawn from plaintiff's complaint and because the case is before the court on a motion to dismiss, are presumed true and construed in the light most favorable to

plaintiff and all reasonable inferences are drawn in his favor. *See Meade v. Moraine Valley Cmty. Coll.,* 770 F.3d 680, 682 (7th Cir.2014).

interests of the companies in connection with the June 1, 2012 transaction, even though it directly benefitted them at the expense of the companies. The lease agreements were negotiated on behalf of the companies and on behalf of Precision Dose Properties by Darnell and Koopman. The companies were not represented by independent counsel in connection with the lease agreements. Neither lease agreement nor the rents paid under them were disclosed to the Board of Directors or the stockholders of the companies. In 2014, plaintiff requested and received information from counsel for the companies concerning the March 16, 2010 assignment and the June 1, 2012 lease agreements. In response to plaintiff's inquiries and subsequent complaints, defendants committed to unwind the transactions. However, defendants failed to make any effort to do so.

### B. Failure to Sell or Transfer the Kleinheinz Shares

When Kleinheinz died, he owned 10,000 shares each of Precision Dose and Cup Pac directly and though a trust. After Kleinheinz's death, his shares temporarily were controlled by his estate or a trust. Kleinheinz and his trust were parties to the Shareholders Agreements which required the shares to be transferred after his death. Specifically, pursuant to section 6 of those agreements, the companies and the other shareholders were required to perform a valuation and to sell or transfer the Kleinheinz shares on or before June 26, 2013. Pursuant to section 5 of the agreements, the companies were required to notify all other shareholders about the potential transfer of the Kleinheinz shares and to give all other shareholders the option to purchase some or all of the Kleinheinz shares. Despite repeated requests, the Kleinheinz shares have not been purchased, transferred, or offered to all other shareholders and no effort has been made by defendants to comply with their obligations, or to enforce the obligations on the holders of the Kleinheinz shares to transfer the shares, under the shareholder agreements. Instead, Koopman and Darnell, as well as other representatives of the companies, have informed the holders of the Kleinheinz shares that they do not have any obligation to transfer the shares because the companies have waived their contractual obligations to value and transfer the Kleinheinz shares. However, by their terms, the shareholders agreements may only be amended pursuant to a written agreement signed by all shareholders and no such amendment has taken place.

### C. Dividend Payments to Darnell Disguised as Consulting Payments

In November 2014, plaintiff learned of a consulting agreement between Precision Dose and a company owned and controlled by Darnell, providing Darnell with $3,750 per month for consulting services. The agreement was later modified to increase the consulting fee to $11,666.67 a month. Darnell does not provide consulting services to Precision Dose apart from his role as a director and officer for which he is separately compensated. Precision Dose does not receive any value in exchange for the payments made to Darnell or his affiliate under the consulting agreement. Neither the consulting agreement nor the modification to the agreement were approved by the Precision Dose Board of Directors and the consulting fees are disguised dividend payments which should have been provided to all shareholders. Defendants not only failed to disclose to all shareholders the consulting agreement, the modification, and the payments made under it but also actively tried to conceal their existence from the shareholders. For example, defendants never caused the consulting agreement or the payments made under it to appear on the financial statements of Precision Dose.

On October 12, 2012, plaintiff, through counsel, specifically requested that counsel for the companies provide information concerning transactions between the companies and their shareholders, and Koopman and Darnell knew about the request. Nevertheless, counsel for the companies did not disclose the existence of the consulting agreement or the payments made pursuant to it when he responded to plaintiff's inquiry on November 5, 2012. Plaintiff requested that the consulting agreement be terminated and that the payments to Darnell cease effective December 1, 2014, but Darnell and Koopman have refused to do so.

### D. Manipulation of Valuations to Artificially Deflate Plaintiff's Share Value

A 2012 valuation of Precision Dose by its primary outside accountant was criticized by management, including Darnell and Koopman, as significantly lower than its actual value. In 2013, at a time when Darnell and Koopman knew or should have known that plaintiff was interested in parting ways with the companies, the shareholders determined that it was appropriate for the companies to retain the accounting firm BKD, LLP ("BKD"), to conduct an independent valuation of the companies and Darnell and Koopman agreed to cooperate with BKD. Despite their fiduciary duties and other obligations to plaintiff and the other shareholders, and despite their commitment to cooperate with BKD, Koopman and Darnell did not cooperate, and instead supplied inaccurate and incomplete information with the intent of achieving the lowest valuation possible. For example, they refused to provide any projections of expected growth, or to disclose lease payments to related companies, and the disguised dividend payments. BKD's initial valuation was similar to the April 2012 valuation, which management, including Koopman and Darnell, had criticized as too low. Then, after a meeting with Koopman and Darnell, BKD lowered the valuation even further. Plaintiff, through counsel, requested that the companies obtain a valuation that reflected the fair market value of his shares, without applying any discount due to his minority interest or to any potential lack of marketability. In spite of plaintiff's request, defendants asked BKD to apply a significant discount to plaintiff's shares because plaintiff is a minority shareholder whose shares have limited marketability and, as a result, BKD's valuation in no way reflects "fair value."

### E. Refusal to Sell the Companies or Purchase Plaintiff's Shares

Plaintiff has informed the Boards of Directors that it is in the best interest of the companies and their shareholders for the companies to be marketed for sale. Such a sale would reflect the true value of the shareholders' interest in the companies, and would also prevent further dilution of the value of the shares due to the disguised dividends, waste, failure to accurately value the company and other misconduct. Plaintiff has informed the Boards of Directors that, as an alternative, the companies should purchase his shares. Koopman and Darnell, and through them the companies, have rejected plaintiff's requests and stated that they believe it would be inappropriate to sell the companies at this time. The basis for Koopman's and Darnell's refusal to consider a sale of the companies is not because they believe it is in the best interest of the shareholders, but rather because Koopman, Darnell, and their friends and family are employed by and receive a substantial portion of their income from the companies through salaries, dividends in the guise of consulting payments, and because other companies they control continue to receive large payments from the companies.

### F. Demands on the Boards of Directors

Plaintiff states that he has asked the companies' Boards of Directors for the relief sought in his complaint but they have refused. Specifically, and by way of example, plaintiff alleges that he:

(a) demanded that the lease transactions involving Precision Dose Properties ... be unwound, including in a letter from counsel dated November 12, 2014; (b) demanded that the Kleinheinz Shares (as defined below) be repurchased pursuant to the applicable shareholder agreements (as more fully alleged below), including in correspondence from counsel dated February 17, 2014; (c) demanded that Precision Dose Inc. cancel the consulting agreement with Mr. Darnell that is the subject of allegations below via a letter from counsel dated November 26, 2014; (d) demanded that a fair valuation be conducted (as more fully alleged below), including in a letter from counsel dated December 17, 2013; and (e) demanded that the companies either purchase his shares or sell their assets as a going concern, including in the letter from counsel dated December 17, 2013. The Boards of Directors have refused to take any of the actions demanded by Mr. Toscano.

Plaintiff alleges that further demand would be futile because Anderson and the son of Kleinheinz are personal friends and affiliates of Darnell and Koopman whose actions or inactions have resulted in this litigation. Moreover, the Boards of Directors' actions have conclusively demonstrated that they will not take action to correct the misconduct.

In his complaint, plaintiff brings claims for relief from oppression of a minority shareholder pursuant to the Illinois Business Corporation Act, 805 ILCS 5/12.56, individually against Koopman, Darnell, and the companies (Count I); breach of fiduciary duty individually and derivatively on behalf of the companies against Koopman and Darnell (Count II); breach of contract individually and derivatively on behalf of the companies against Koopman and Darnell (Count III); unjust enrichment individually and derivatively on behalf of the companies against Koopman, Darnell, and Precision Dose Properties (Count IV); and an equitable accounting individually and derivatively on behalf of the companies against Koopman, Darnell, and the companies (Count V).

## II. ANALYSIS

Defendants advance four arguments in support of their motion to dismiss: (1) the derivative claims in Counts II–V are unverified and are not pleaded with the particularity that is required by Rule 23.1(b)(3); (2) plaintiff lacks standing to bring his individual claims in Counts I, II, IV, and V; (3) all claims in Counts I, II, IV, and V are not pleaded with the particularity that is required by Rule 9(b); and (4) plaintiff has failed to state a claim in Counts III, IV, and V. Plaintiff takes issue with each of defendants' arguments.

### A. Shareholder Derivative Claims in Counts II–V

Initially, defendants argue that plaintiff's shareholder derivative claims should be dismissed because the complaint is not verified as required by Rule of Civil Procedure 23.1(b). Plaintiff acknowledges the oversight, but maintains that he has now complied by submitting an affidavit affirming that the allegations in the complaint are true. Plaintiff points out that a subsequent affidavit verifying the derivative allegations in an unverified complaint has been held to satisfy Rule 23.1(b)'s verification requirement, *see Recchion ex rel. Westinghouse Elec. Corp. v. Kirby*, 637 F.Supp. 1309, 1318 (W.D.Pa.1986), and that if this court believes that it does not,

he stands ready to file a verified amended complaint. The foregoing authority notwithstanding, because of a lack of Seventh Circuit authority, the court will require plaintiff to file a verified amended complaint.

Defendants also argue that the shareholder derivative claims are not plead with the particularity that is required by Rule 23.1(b)(3), which necessitates that the complaint:

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3). Specifically, defendants contend that because none of the alleged correspondence from plaintiff's counsel is attached to the complaint or quoted, it is unclear what precisely was demanded or who received the correspondence.[2] In particular, according to defendants, the alleged demands do not identify the alleged wrongdoers, the wrongdoing they allegedly perpetrated, and the resultant injury to the companies. Defendants also contend that the conclusory allegation that "[t]he Boards of Directors have refused to take any of the actions demanded" is unsupported by description of the refusals including when they were made, who made them, and how they were communicated to plaintiff.

Pleading with particularity means that a plaintiff must include "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). Plaintiff has specifically pleaded that he complained about five incidents of wrongdoing by defendants Koopman and Darnell, that is that they have (1) usurped Cup Pac's option to purchase the property on which it operates only to lease it back to Cup Pac for the benefit of Precision Dose Properties, and in turn themselves as its sole shareholders, and have refused to unwind the lease and compensate Cup Pac for the lost opportunity; (2) taken the position that the companies have waived the provision in the shareholders agreements requiring that the Kleinheinz shares be offered for sale to the other shareholders; (3) disguised monthly dividends to Darnell as consulting fees and concealed the consulting agreement from plaintiff and other shareholders to their detriment and to the detriment of the companies, (4) failed to cooperate in order to produce a fair valuation of the companies; and (5) refused to purchase plaintiff's shares at a fair value or to sell the companies at a fair value. Plaintiff seeks individually and derivatively on behalf of the companies, among other relief, an order enjoining defendants from continuing to honor the concealed lease and consulting agreement and from fraudulently undervaluing the companies, the money and benefits defendants derived from those transactions, and an accounting.

■ Plaintiff has explicitly alleged that he made his five demands on the Boards of

2. In their reply brief, defendants contend further that plaintiffs demands were never made directly upon any of the board members but were purportedly made on counsel for the boards, who is not a director and has no voting rights. There is no such allegation in the complaint. Instead, plaintiff alleged that he "has asked the Boards of Directors of Precision Dose Inc. and Cup Pac for the relief he seeks here, but they have refused," and that he made his five demands in four letters from his counsel dated December 17, 2013, February 17, 2014, November 12, 2014, and November 26, 2014. Moreover, even if these letters were sent to counsel for the boards, the case cited by defendants, *Equitec–Cole Roesler LLC v. McClanahan*, 251 F.Supp.2d 1347, 1353 (S.D.Tex.2003), does not establish that such a demand is inadequate.

Directors of the companies. Specifically, in paragraph 15, plaintiff has alleged that he asked the Boards of Directors of the companies for the relief he seeks in this suit. In particular, and by way of example, plaintiff has alleged in paragraph 16 of his complaint that in letters dated November 12, 2014, February 17, 2014, November 26, 2014, and December 17, 2013, his attorney demanded that the Boards of Directors unwind the lease which was procured by usurping Cup Pac's option; repurchase the Kleinheinz shares; cancel the sham consulting agreement with Darnell; refrain from inhibiting a fair valuation of the companies, and either purchase plaintiff's shares or sell the companies. Defendants have not cited authority requiring that the demand letters be attached to the complaint or that language from the letters be quoted. Plaintiff also alleges the locations of the companies, persons, agreements, and assets. Moreover, plaintiff specifically alleges that "[t]he Boards of Directors have refused to take any actions demanded by [him]." These allegations meet the who, what, when, where, and how particularity pleading standard. Consequently, this court cannot agree that the complaint lacks sufficient factual allegations to satisfy Rule 23.1(b)(3)'s particularity requirement.

Defendants also protest that plaintiff's demands are not pleaded in accordance with Rule 23.1(b)(3) because he has not alleged each of the five incidents of wrongdoing with sufficient particularity. Defendants five protests in this regard, which correspond to the five incidents of alleged wrongdoing, are as follows: (1) that the lease transaction between Precision Properties and Cup Pac was unfair or on commercially unreasonable terms; (2) that they have the ability to compel the sale of the Kleinheinz shares; (3) a reason why he, Anderson, and Kleinheinz' son have failed to terminate the consulting agreement over the objection of Koopman and Darnell; (4) that he demanded a revised, non-binding appraisal of the companies or why he did not commission his own; and (5) a right to be bought out under the shareholders' agreements.

It is important to note that, with the exception of the breach of contract claim in Count III, all the counts within the complaint are premised on all five alleged incidents of fraudulent misconduct such that no count will suffer dismissal for lack of particularity where at least one incident is pleaded with sufficient particularity. *See Lewis v. Lead Indus. Ass'n, Inc.*, 342 Ill. App.3d 95, 104, 276 Ill.Dec. 110, 793 N.E.2d 869 (2003) (noting that a complaint sounding in fraud must allege, inter alia, at least one allegation that the defendant falsely stated a material fact or concealed a material fact that the defendant had a duty to disclose). Therefore, without delving into each of defendants' protestations, suffice it to say that the alleged unilateral usurpation of Cup Pac's option to purchase the property it now rents from Precision Dose Properties without the knowledge and consent of the Boards of Directors and the concealment of the transaction and resultant lease is fraudulent conduct pleaded with sufficient factual particularity. Defendant's first protestation is inconsequential because plaintiff's allegation is that Koopman and Darnell fraudulently deprived Cup Pac of its option to buy the property, not that the rent is too high. It is also true that the sham consulting agreement is pleaded with sufficient particularity and the lack of an allegation that plaintiff, Anderson, and Kleinheinz' son have not acted to terminate the consulting agreement does not alter this fact in light of the allegation that the Boards of Directors have failed to act.

The breach of contract claim in Count III is predicated on the alleged failure to enforce the provisions of the shareholders

agreements providing for transfer of the Kleinheinz shares. Defendants protest that the demand requirement of the derivative portion of this claim is not pleaded with sufficient particularity because there is no allegation that they, as opposed to the holders of the Kleinheinz shares, have any obligation to transfer the shares. The court disagrees based on the rationale in Section II. D. of this order concluding that plaintiff has stated a claim for breach of contract premised on the plausible allegation that defendants have an obligation to require the transfer.

■ Defendants also argue that plaintiff's allegations that further demands for action by the Boards of Directors would be futile are insufficient. However, where an actual demand is sufficiently pleaded, there is no need to plead demand futility. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ("Rule 23.1 clearly contemplates both the demand requirement and the possibility that demand may be excused . . . ."(emphasis omitted)). In any event, even assuming for argument's sake that plaintiff failed to plead with particularity that he made his five demands to the Boards of Directors, this court agrees that plaintiff has adequately pleaded demand futility because he has alleged facts "with particularity which create a reasonable doubt that the directors' actions were entitled to the protections of the business judgment rule." *In re Abbott Labs. Derivative S'holders Litig.,* 325 F.3d 795, 807 (7th Cir.2003) (quotation marks omitted). For example, disguising monthly $11,666.67 dividend payments made to Darnell as consulting fees, where Darnell is providing no consulting services to the companies, is certainly beyond the purview of any reasonable business judgment. For these reasons, the court will not dismiss plaintiff's derivative claims for failure to comply with the requirements of Rule 23.1(b)(3).

## B. Individual Claims in Counts I, II, IV and V

■ Next, defendants argue that plaintiff lacks standing to bring his individual claims alleged in Counts I, II, IV, and V because he has not alleged that he has suffered a separate injury distinct from a generalized injury suffered by all shareholders. In Illinois, "shareholders do not have standing to bring an individual claim for relief unless they allege 'something *more* than wrong to the corporate body.'" *Andrews v. Gerace,* No. 13 CV 1521, 2014 WL 4627383, at *4 (N.D.Ill. Sept. 15, 2014) (quoting *Davis v. Dyson,* 387 Ill.App.3d 676, 689, 326 Ill.Dec. 801, 900 N.E.2d 698 (2008)). Consequently, "[i]f the only injury to the shareholder is an indirect one— that is, if the injury was inflicted directly on the corporation and was suffered by the shareholder only because she owned shares in the company—the shareholder does not have standing to sue in her own right." *Id.*

Plaintiff maintains that Count I is a claim for relief as a minority shareholder of a nonpublic corporation under § 12.56 the Illinois Business Corporation Act and that such an action can only be brought on behalf of a shareholder, not derivatively on behalf of the corporation. Defendants response is that "plaintiff misses the point" because the issue is not whether § 12.56 claims can only be brought individually, but whether the nature of the alleged injury impacted the corporation as a whole. Defendants cite *Hamilton v. Conley,* No. 2003–L–05, 2004 WL 5135762 (Ill.Cir.Ct. Mar. 23, 2004), as an example of a court dismissing a § 12.56 claim for failure to plead a distinct injury to the plaintiff.

■ Section 12.56 gives "a shareholder" in a non-public corporation access to remedies when "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with re-

spect to the petitioning shareholder whether in his or her capacity as a shareholder, director, or officer, or ... [t]he corporation assets are being misapplied or wasted." 805 ILCS 5/12.56(a)(3)–(4). "This language gives an individual shareholder a right to individual relief for harm done by a corporation." *Ayers v. Ayers,* No. 11–2208, 2012 WL 1029468, at *2 (C.D.Ill. Feb. 22, 2012). The *Hamilton* opinion is that of an Associate Judge of the Illinois Circuit Court and has no precedential value. It also lacks persuasiveness on the issue because it relies on cases that do not specifically address § 12.56 claims. *See Small v. Sussman,* 306 Ill.App.3d 639, 643, 239 Ill.Dec. 366, 713 N.E.2d 1216 (1999); *Hunter v. Old Ben Coal Co.,* 844 F.2d 428, 431 (7th Cir.1988); *Poliquin v. Sapp,* 72 Ill.App.3d 477, 480, 28 Ill.Dec. 615, 390 N.E.2d 974 (1979). Defendants cite no other authority for the proposition that a distinct injury to plaintiff is required to bring a claim under § 12.56. Consequently, plaintiff's individual claim set forth in Count I stands.

■ As for Count II, plaintiff maintains that he has alleged that Koopman and Darnell violated their independent fiduciary duties to the companies and to him as a shareholder. While it is true that directors owe both the corporations they direct and the shareholders a fiduciary duty, and that shareholders of a close corporation owe a fiduciary duty to the corporation and other shareholders, *see Talton v. Unisource Network Servs., Inc.,* No. 00 C 7967, 2004 WL 2191605, at *13 (N.D.Ill. Sept. 27, 2004), that does not mean that an individual shareholder can maintain a direct action for breach of that duty without

alleging a distinct injury, *see Andrews,* 2014 WL 4627383, at *6–7. In this case, plaintiff has not alleged that he has suffered a distinct injury apart from injuries suffered by all shareholders of the companies. Accordingly, the individual claim in Count II is dismissed.

As for Counts IV and V, plaintiff argues that he is entitled to plead these claims in the alternative to his legal claims. That may be so, but it does not resolve the distinct-injury defect. Therefore, the individual claims in Counts IV and V are also dismissed. However, since plaintiff has been granted leave to file an amended complaint, he may replead the individual claims in Counts II, IV, and V with the required factual particularity, including an allegation of a distinct injury, if counsel can do so in accordance with his Rule 11 obligations.

### C. All Claims in Counts I, II, IV and V

Defendants also argue that all Counts, except Count III, should be dismissed for failure to meet the heightened pleading threshold for fraud under Rule 9(b). The parties dispute whether the Rule 9(b) standard applies to all of plaintiff's claims. However, the court will not resolve that dispute because, assuming that the heightened standard applies, it is met. For the same reasons that this court has concluded that plaintiff has met Rule 23.1(a)'s particularity requirement with respect to his demands that the Boards of Directors correct the alleged incidents of misconduct, the court concludes that the various frauds and misconduct have been stated with sufficient particularity to satisfy Rule 9(b).[3]

---

3. Defendants also complain that many of plaintiff's allegations are made "on information and belief" and that such allegations cannot support fraud allegations. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 442 (7th Cir.2011) ("[A] plaintiff generally cannot sat-

isfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief."). While it is true that various allegations in the complaint are made on information and belief, the gravamen of the fraud allegations are not so made and therefore Rule 9(b) is nevertheless satisfied. For

## D. Counts III, IV, and V

Defendants maintain that Counts III, IV, and V should be dismissed under Rule 12(b)(6) for failure to state a claim. When deciding a defendant's motion to dismiss pursuant to Rule 12(b)(6), a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir.2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation marks omitted).

■ First, defendants argue that plaintiff has failed to allege that they have breached a duty to provide a valuation of the companies or to sell or transfer the Kleinheinz shares. However, in Count III, plaintiff has alleged in pertinent part that the shareholders agreements require the parties to take certain actions to value and transfer the Kleinheinz shares following the death of Mr. Kleinheinz; Darnell and Koopman, as parties to the shareholders agreements, have refused to take those steps and have instead taken the position that those requirements have been waived; and that defendants have refused to comply with their contractual obligations. Paragraph A of Section 6 of the shareholders agreements provide:

*Death of a Shareholder ....* [the] deceased or incapacitated individual's estate and/or trust ... shall be required to sell and transfer all Shares in the Company owned.

....

The sale and transfer of said Shares must take place within eighteen months from the death or incapacity of the Shareholder.

This language could fairly be read to assign a duty to the parties to the shareholders agreements to require a decedent shareholder's estate to sell all shares. Therefore, Count III does not fail to allege that defendants have breached a duty and will not be dismissed on that ground.

■ Defendants argue that plaintiff has failed to allege in Count IV the absence of a remedy at law which is required to state a claim for unjust enrichment. In response, plaintiff states that unjust enrichment may be pleaded in the alternative to his legal claims and if his legal claims fail he will not have a remedy at law. Plaintiff is correct that he is permitted to plead alternative theories, *see* Fed. R. Civ. P. 8(d)(2), and, therefore, the court will not dismiss his unjust enrichment claim on this basis at this time.

■ Defendants also argue that plaintiff has failed to plead "a relation between the enrichment and impoverishment" or "the absence of justification" elements of unjust enrichment because there is no allegation that the rent under the lease with Precision Dose Properties is above market rate or that Cup Pac is not receiving value for the rent. However, plaintiff has alleged that Cup Pac was deprived of its option to buy the property it now rents

example, while the allegations concerning the expiration and amendment of the real estate leases with Precision Dose Properties are made on information and belief, the core allegations that the assignment of Cup Pac's op-

tion to Precision Dose Properties without the Boards' knowledge or consent and without compensating Cup Pac is made without the "on information and belief" qualifying language.

from Precision Dose Properties, this impoverished Cup Pac, enriched Precision Dose Properties and, in turn, Koopman and Darnell. Thus, the "relation between the enrichment and impoverishment" and "the absence of justification" elements of unjust enrichment are satisfied. Finally, defendants argue that the unjust enrichment and accounting claims in Counts IV and V are merely a "repackaging" of the breach of fiduciary duty and corporate waste claims alleged in Counts I and II. This may ultimately prove true, but the "repackaging" argument does not now require dismissal of Counts IV and V.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The individual claims alleged in Counts II, IV, and V are dismissed without prejudice. The motion is denied in all other respects. Plaintiff is granted leave to file an amended complaint consistent with the directives in this order within 30 days.